# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

| | | |
|---|---|---|
| **BRIDGETT HANDY-CLAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2927-STA** |
| | ) | |
| **CITY OF MEMPHIS;** | ) | |
| **MAYOR AC WHARTON, individually** | ) | |
| **and in his official capacity;** | ) | |
| **HERMAN MORRIS, individually and** | ) | |
| **in his official capacity as** | ) | |
| **CITY ATTORNEY; and** | ) | |
| **CATHY PORTER, individually and** | ) | |
| **in her official capacity as** | ) | |
| **SENIOR LEGAL ADMINISTRATOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
_____

Before the Court are Defendant City of Memphis' Motion to Dismiss (D.E. # 32) and

Supplemental Motion (D.E. # 42); Defendant Mayor Wharton's Motion to Dismiss (D.E. # 39);

and Defendants Morris and Porter's Motion to Dismiss Individual Capacity Claims (D.E. # 43).[1]

Plaintiff has filed responses in opposition to Defendants' respective Motions (D.E. # 52, 54, 59,

60).  For the reasons set forth below, Defendants' Motions to Dismiss are **GRANTED**.

---

[1] All Defendants have filed a Motion to Stay Discovery (D.E. # 48) until the Court has
ruled on the various Motions to Dismiss.  Because the Court holds that Plaintiff has failed to
state her federal law claims, Defendants' Motion to Stay is **DENIED** as moot.

## BACKGROUND

The Amended Complaint alleges that on July 4, 2007, Plaintiff was appointed Public Records Coordinator for the City of Memphis. (Am. Compl. ¶ 12.) The City's Public Records Coordinator was responsible for ensuring that each request for records made pursuant to the Tennessee Open Records Act was forwarded to the appropriate records custodian and processed in a timely manner. (*Id*. ¶ 13.) Pursuant to the Memphis City Charter and the Code of Ordinances of the City of Memphis, Plaintiff was classified as an exempt employee in the City Attorney's Office. (*Id*. ¶ 14.) During her tenure, Plaintiff alleges that she was never received any disciplinary action and was an otherwise exemplary employee. (*Id*. ¶ 15.) In addition to her duties as Public Records Coordinator, Plaintiff was assigned to record and transcribe the minutes of the Memphis Charter Commission and served as the City's liaison to the New Memphis Arena Public Building Authority. (*Id*. ¶ 17.)

When Plaintiff assumed her post as Public Records Coordinator in 2007, Tennessee law required that records requests be fulfilled within five (5) days; the time was later extended to seven (7) days. (*Id*. ¶ 18.) The Amended Complaint alleges that the volume of public records requests increased substantially after Plaintiff entered the job and continued to increase throughout her tenure. (*Id*. ¶ 16.) Initially, Plaintiff met with then-City Attorney Elbert Jefferson ("Jefferson") on a weekly basis to discuss records requests. (*Id*. ¶ 19.) Subsequently, Defendant Cathy Porter ("Porter") began to cancel or reschedule Plaintiff's weekly meetings with Jefferson. (*Id*.) As a result, Plaintiff submitted the requests to Porter who would in turn bring them to Jefferson's attention. (*Id*.) Because of the change in protocol, Plaintiff began to receive complaints from the Memphis Commercial Appeal and others about delays in processing records

2

requests. (*Id.* ¶¶ 19,20.)  According to Plaintiff, she pushed to get records released despite Jefferson's delay tactics. (*Id.* at 20.)  In many instances, the requests were reassigned to Tony Holman Turner in the Mayor's office, leaving Plaintiff unable to review requests to ensure that the City complied with state law. (*Id.*)

In November 2007, the FBI, the Commercial Appeal, and other media began an ongoing investigation into city contracts given to specific companies, including E.W. Moon, Inc., Integrate Technologies, and ACS. (*Id.* ¶ 21.)[2]  The investigation concerned a land deal between then-Mayor W.W. Herenton and E.W. Moon. (*Id.*)  Plaintiff alleges that in response to records requests about the contracts, she encountered "stonewalling and stall tactics" from ACS when ACS refused to produce records. (*Id.*)  ACS claimed that it was not a city entity. (*Id.*)  Plaintiff pursued the records requests with Charles Elliott, ACS's Memphis Account Manager, and as a result obtained some of the requested records. (*Id.*)  Plaintiff experienced similar resistance within city government from division directors, Jefferson, and Porter. (*Id.* ¶ 22.)  Plaintiff alleges that even her simple requests for office supplies and adequate work space were delayed. (*Id.*)

In 2008, Plaintiff received many requests from the FBI, the Commercial Appeal, and other media for records in connection with the plans to move the Greyhound bus station from Downtown Memphis to the airport, including Mayor Herenton's role in that transaction. (*Id.* ¶ 26.)

Plaintiff raised her concerns with Jefferson about a pattern of resistance from city officials in producing records. (*Id.* ¶ 23.)  The Amended Complaint alleges that "there was an entrenched culture at City Hall to disclose only the bare minimum needed to comply" with

---

[2] The Amended Complaint does not further identify "ACS."

requests and further to conceal as much as possible. (*Id.* ¶ 24.)  Plaintiff contends that she suffered "interference, retaliation and disparate treatment" for her efforts to comply with records requests. (*Id.*)  Plaintiff informed Jefferson of the need for uniform policies and procedures to address "disparate treatment." (*Id.* ¶ 25.)  Despite Jefferson's assurances to address the situation, nothing was ever done. (*Id.*)  In August 2009, Plaintiff requested from Jefferson, and later from Porter, a copy of the official City Attorney's office internal procedures but never received a response. (*Id.* ¶ 27.)  Plaintiff continued to complain to Jefferson and Senior Legal Attorney Gerald Thornton about obstruction of her efforts to comply with records requests. (*Id.* ¶ 28.) Plaintiff also complained about the general practice of some city employees of not reporting absences from work. (*Id.*)

In 2009, Myron Lowery ("Lowery") became Mayor Pro Tempore and instructed Plaintiff to refer all public records requests to the City's Chief Administrative Officer ("CAO") for review. (*Id.* ¶ 29.)  The Amended Complaint alleges that the Mayor's Office assumed responsibility due to the continued obstruction from other division directors. (*Id.*)  At that time Plaintiff raised her previous concerns about delays in producing records with Demar Roberts in the CAO's office. (*Id.* ¶ 30.)

After assuming office, Mayor Pro Tempore Lowery also terminated Jefferson as City Attorney, at which point Jefferson refused to step down. (*Id.* ¶ 31.)  Instead Jefferson took a leave of absence. (*Id.*)  The City continued to receive new records requests from the FBI during Jefferson's absence. (*Id.*)  Even though Jefferson was not in the office, he instructed Plaintiff to

gather "public records regarding the FBI investigation" and place them on his desk. (*Id.*)[3]  The FBI interviewed Porter and others at this time as well. (*Id.*)  Plaintiff alleges that on one occasion she heard Porter and another employee shredding documents in Jefferson's office. (*Id.*)  Porter also restructured the office organizational chart to transfer supervision of Plaintiff from the Senior City Attorney to Porter herself. (*Id.*)

Thereafter, Veronica Coleman-Davis ("Coleman-Davis") became acting Deputy City Attorney. (*Id.* ¶ 32.)  Plaintiff complained to Coleman-Davis about the retaliation Plaintiff suffered and the "culture of concealment." (*Id.*)  In October 2009, Plaintiff also approached Julian Mabry ("Mabry") in city payroll to inquire about policy on time-keeping, "due to the retaliation." (*Id.* ¶ 33.)[4]  Mabry suggested that Plaintiff document the attendance of the employees who allegedly failed to report time away from the office and maintain her own record. (*Id.*)

On October 10, 2009, newly-elected Mayor AC Wharton issued an executive order establishing standards of performance for transparent and open city government, emphasizing the importance of access to public records. (*Id.* ¶ 34.)  On October 21, 2009, Defendant Herman Morris ("Morris") was sworn in as City Attorney in the new administration. (*Id.* ¶ 35.)  The following day, Plaintiff sent Morris an email again raising her concerns about the misuse of time by city employees and other job duties. (*Id.* ¶ 36.)  Plaintiff met with Morris about these issues on October 27, 2009, but alleges that Morris never took any action. (*Id.* ¶ 38.)  Plaintiff also met

---

[3] The precise meaning of the phrase "public records regarding the FBI investigation" is not clear from the Amended Complaint.

[4] The Amended Complaint does not further define the phrase "due to the retaliation."

with Lowery, who had returned to the City Council, and reported her concerns about leave abuses and retaliation. (*Id*. ¶ 43.)  Lowery recommended that Plaintiff adapt to the culture of City Hall and keep a low profile. (*Id*.)

On June 10, 2010, the City Law Review Division, consisting of private sector attorneys, reported on the city legal department and noted "serious concerns" about the office's structure and "culture." (*Id*. ¶ 39.)  For example, the legal department had employees with the job title "paralegal" who were not in fact paralegals. (*Id*. ¶ 40.)  The review also reported problems with nepotism and favoritism based on personal relationships in the office. (*Id*. ¶ 41.)

Plaintiff observed that Morris was frequently absent from the office and concluded that Morris was abusing the leave system in his own right. (*Id*. ¶¶ 44, 45.)  Morris' absences led to delays in fulfilling records requests related to the Commercial Appeal's investigation of city vehicle repair contracts. (*Id*. ¶ 46.)[5]  Plaintiff alleges that Porter pressured her not to go to the division where the documents relating to the vehicle repair contracts were kept, although Morris had approved the document release.  (*Id*. ¶ 48.)  When Plaintiff threatened to report Porter's comments to Morris, Porter relented. (*Id*.)  Plaintiff continued to complain about retaliation in the City Attorney's Office and even went to Antonio Adams with the City's EEOC office. (*Id*. ¶ 50.)  Adams referred Plaintiff back to Morris. (*Id*.)  But Morris did not address Plaintiff's complaints. (*Id*. ¶ 51.)

Plaintiff responded on August 26, 2010, by filing her own records requests with the City,

---

[5] Plaintiff alleges that she worked long hours but was advised that she was not entitled to compensation. (*Id*. ¶ 47.)  Later Plaintiff learned that other employees did receive additional compensation, and so Plaintiff approached Porter for approval of compensation. (*Id*.)  The Amended Complaint does not indicate whether Plaintiff's requests to Porter were approved or denied.

seeking documents on vacation, sick and bonus time, time sheets, docked pay, personnel files, and payroll check requests for City Attorney's Office staff, including Morris. (*Id*. ¶ 52.)  Plaintiff made her requests known by email to a number of City employees and offices. (*Id*. ¶¶ 53, 54.)  On August 27, 2010, Plaintiff met with Quinton Robinson in the City's Human Resources department and explained her concerns about abuse of leave in City Hall. (*Id*. ¶ 55.)  Later the same day, Plaintiff submitted a second records request for payroll records for employees in the City Attorney's Office. (*Id*. ¶ 56.)  Approximately two hours later, Morris handed Plaintiff a termination letter signed by Mayor Wharton. (*Id*. ¶ 57.)  Plaintiff was dismissed without any investigation. (*Id*.)[6]

On August 30, 2010, the City CAO George Little ("Little") held a press conference and stated that Plaintiff was terminated for failure to follow unspecified policies and procedures and for a poor attendance and leave record. (*Id*. ¶ 59.)  Little's comments appeared in the Commercial Appeal and in other media reports in the Memphis area. (*Id*.)

Based on these allegations, the Amended Complaint asserts claims for violation of the Tennessee Public Protection Act ("TPPA") ("Count I"); punitive damages ("Count II"); common law retaliatory discharge and wrongful termination ("Count III"); tortious interference with at-will employment ("Count IV"); breach of the duty of good faith and fair dealing ("Count V"); deprivation of constitutional rights in violation of 42 U.S.C. § 1983 ("Count VI"); and torts in violation of the Tennessee Governmental Tort Liability Act ("GTLA") ("Count VII").

---

[6] Plaintiff alleges that at the time of her termination, she was finalizing the records request related to the media investigation of the City's vehicle repair contracts. (*Id*. ¶ 58.)

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled factual allegations of the complaint as true, construe those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the plaintiff.[7]  However, legal conclusions "masquerading as factual allegations" or unwarranted factual inferences including "conclusory allegations" need not be accepted as true.[8]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[9]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[10]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[11]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is

---

[7] *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2007).

[8] *Id.*

[9] *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

[10] Fed. R. Civ. P. 8(a)(2).

[11] *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  *See also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

plausible on its face."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## ANALYSIS

### I.   Plaintiff's Section 1983 Claims for Violations of Her Constitutional Rights

Plaintiff's only cause of action under federal law is her § 1983 claim against all Defendants.  The Amended Complaint alleges that the Court has federal question jurisdiction in this case pursuant to 42 U.S.C. § 1331 and jurisdiction over her civil rights claims pursuant to 42 U.S.C. § 1343.[14]  Although Defendants' separate Motions to Dismiss argue that Plaintiff has failed to state all of her claims, the Court will consider as a threshold matter whether Plaintiff has stated a plausible § 1983 claim.

Section 1983 imposes civil liability on every person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State" causes the "deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[15]  To state such a claim, a plaintiff must allege (1) that the defendant acted under color of state law and (2) that the defendant's conduct deprived the plaintiff of rights secured by the Constitution.[16]  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal

---

[12] *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

[13] *Iqbal,* 129 S.Ct. at 1949.

[14] Am. Compl. ¶ 5.

[15] 42 U.S.C. § 1983.

[16] *Fritz v. Charter Tp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003).

rights elsewhere conferred."[17]  "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."[18]  Plaintiff has asserted two separate theories of recovery for violations of § 1983: retaliation in violation of her First Amendment free speech rights and denial of her Fourteenth Amendment due process rights.  The Court will analyze each of Plaintiffs' theories in turn.

### A. *Retaliation in Violation of the First Amendment*

The Amended Complaint alleges that Plaintiff was dismissed from her position as the City's Public Records Coordinator in retaliation for the exercise of her constitutional right to free speech.  As a result, Defendants' actions deprived Plaintiff of her First Amendment rights to freedom of speech, specifically her freedom to speak on matters of public concern.[19]  The Sixth Circuit has held that retaliation for the exercise of constitutional rights is itself a violation of the Constitution.[20]  In order to state a § 1983 claim that a government official retaliated against a

---

[17] *Smith v. Shelby Cnty.*, 721 F. Supp. 2d 712, 723 (W.D. Tenn. 2010); *Humes v. Gilless,* 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001) (citing *Graham v. Connor,* 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989)).

[18] *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986).

[19] *Id*. ¶ 95 ("Handy-Clay made statements on matters of clear public concern to report obstruction in the efforts by the public and law enforcement investigators to gain access to public records that would expose public corruption. . . ."); ¶ 97 ("Handy-Clay made statements on matters of clear public concern with regard to reporting violation of city leave and pay policies, nepotism, favoritism, and conflicts of interest, by certain city employees. . . ."); and ¶¶ 98,99 (Defendants' actions "intentionally deprived the Plaintiff of her rights under the laws and Constitution of the United States, in particular, the First and Fourteenth Amendments and 42 U.S.C. (sic) 1983.")

[20] *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

plaintiff in violation of the First Amendment, the plaintiff must allege the following elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.[21]

All Defendants have argued that Plaintiff has failed to allege the first element in this claim, namely, that she engaged in constitutionally protected conduct. Defendants contend that Plaintiff spoke out about "the culture of concealment" at City Hall in responding to public records requests in her capacity as Public Records Coordinator. Defendants maintain that the First Amendment does not protect public employees who make statements pursuant to their official duties. Additionally, Plaintiff's complaints about retaliation from other city employees and abuse of the leave policy stemmed from her efforts to ensure that records requests were fulfilled. Thus, the Court should hold that these statements are not entitled to First Amendment protection. Plaintiff has responded that her statements touched on matters of public concern, including obstruction of justice, waste of government resources, and abuse of leave. Therefore, Plaintiff's speech is protected by the First Amendment and Plaintiff has stated a plausible claim for retaliation.

In order for a public employee's statements to receive First Amendment protection, the public employee must speak as a citizen and address matters of public concern.[22] The Supreme

---

[21] *Fritz*, 592 F.3d at 723 (citing *Mezibov v. Allen,* 411 F.3d 712, 717 (6th Cir. 2005)).

[22] *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 1959 (2006) (citing *Pickering v. Bd. of Ed. of Township High Sch. Dist. 205,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See also Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir.

Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[23]  In so far as public employees speak as citizens about matters of public concern, employers may restrict speech only to the extent necessary to operate efficiently and effectively.[24]  Otherwise, "[t]he employees retain the prospect of constitutional protection for their contributions to the civic discourse.  This prospect of protection, however, does not invest them with a right to perform their jobs however they see fit."[25]

The Court holds that Plaintiff's Amended Complaint has failed to state a claim that her speech was protected under the First Amendment.  Plaintiff emphasizes that her speech touched a matter of public concern, here the alleged "culture of concealment" at City Hall and government waste in the form of unreported leave.  Whether a plaintiff's speech touches upon a matter of public concern is a question of law.[26]  A public concern is one relating to "any matter of political, social, or other concern to the community."[27]  The Sixth Circuit has opined that

2010) (citing *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 542 (6th Cir.2007)).

[23] *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951.  *See also Haynes v. City of Circleville,* 474 F.3d 357, 364-65 (6th Cir. 2007) (holding that, pursuant to *Garcetti,* plaintiff's speech made in the course of his official duties was "unprotected as a matter of law").

[24] *Garcetti,* 547 U.S. at 419, 126 S.Ct. 1951 (citing *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

[25] *Id*. at 422.

[26] *Hughes v. Region VII Area Agency on Aging*, 542 F.3ed 169, 180 (6th Cir. 2008).

[27] *Connick,* 461 U.S. at 146, 103 S.Ct. 1684.  *See also Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1,* 131 F.3d 564, 574 (6th Cir. 1997).

"[t]he mere fact that public monies and government efficiency are related to the subject of a public employee's speech does not, by itself, qualify that speech as being addressed to a matter of public concern."[28]  While it is true that Plaintiff's alleged complaints have the ring of internal office politics,[29] the Court finds that it is unnecessary to consider whether her speech touched upon a matter of public concern.

The Court concludes that Plaintiff has failed to plead facts that she made her complaints about public records requests and abuses of time-off in her capacity as a private citizen.  Rather all of the allegations in the Amended Complaint state that Plaintiff's grievances were "matters of personal interest" related to her duties as the City's Public Records Coordinator.[30]  In analyzing the speech of a public employee, the Court may consider the employee's duties, "the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter."[31]  Although the fact that the employee's speech arises in the workplace is not dispositive,[32] a public employee's complaints or concerns "up the chain of command at his workplace about his job

---

[28] *Barnes v. McDowell,* 848 F.2d 725, 734 (6th Cir. 1988).

[29] *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999).

[30] *Connick*, 461 U.S. 138, 147, 103 S.Ct. 1684 ("when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.").

[31] *Weisbarth,* 499 F.3d at 546.

[32] *Garcetti*, 547 U.S. at 420, 126 S.Ct. 1951 ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work.").

13

duties" amounts to speech "undertaken in the course of performing his job."[33]

Here the Amended Complaint alleges that as the City's Public Records Coordinator, Plaintiff was responsible for directing requests for public records to the appropriate records custodian at City Hall and obtaining a timely response. (Am. Compl. ¶ 13.)  Plaintiff alleges that she encountered various instances and forms of resistance to producing records as the law required, which was all part of a "culture of concealment" in city government.  For example, Plaintiff claims that Defendant Porter denied Plaintiff access to the then-City Attorney Elbert Jefferson (*Id.* ¶ 19) as part of Jefferson's "delay tactics" to impede the release of public records (*Id.* ¶ 20).  In addition to opposition from the City Attorney himself, Plaintiff complains that she encountered problems with division directors as well. (*Id.* ¶ 22.)[34]  Plaintiff repeatedly raised these issues with supervisors, including three different City Attorneys and a City Councilman who was also Mayor Pro Tempore, as well as others in City Hall.  To the extent that Plaintiff's internal complaints addressed problems related to delay in complying with open records laws, the Court holds that those complaints were undertaken in the course of performing her job as Public Records Coordinator.  The impetus for the speech is alleged to be difficulties Plaintiff faced in fulfilling records requests promptly.  Therefore, Plaintiff's speech on that subject is not

---

[33] *Burgess v. Paducah Area Transit Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010) (quoting *Davis v. McKinney,* 518 F.3d 304, 313 (5th Cir. 2008)).  *See also Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951 ("The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy."); *Fox,* 605 F.3d at 349.

[34] The Amended Complaint refers to "ACS" but never identifies this entity. (Am. Compl. ¶ 21.)  Based on the allegation about ACS, it appears to the Court that ACS may not be a division or department of Memphis city government.  *See Id.* (Plaintiff "experienced stonewalling and stall tactics when ACS refused to comply, claiming they were not a city entity.").

14

protected and Plaintiff's Amended Complaint has failed to state a First Amendment retaliation claim on that issue.

Plaintiff further alleges that she spoke out about other problems she suffered in the workplace as a direct result of carrying out her job duties.  However, the Court holds that because these additional complaints were strictly work-related and addressed problems Plaintiff personally faced at City Hall, they cannot constitute protected speech undertaken in Plaintiff's capacity as a private citizen.  As a general matter, the Amended Complaint repeatedly employs legal terms such as "retaliation" or "disparate treatment" without any further factual support or context.  For example, Plaintiff alleges that as she pushed to obtain public records, she "experienced continuing interference, retaliation, and disparate treatment." (*Id*. ¶ 24.)  Despite the fact that these are conclusory legal labels, Plaintiff has used them to describe treatment she received as she "fought for the public's right to know" in her capacity as Public Records Coordinator, not as a private citizen. (*Id*.)  Therefore, the Court concludes that these general allegations fail to state a claim for First Amendment retaliation.

As for more specific claims of "disparate treatment" and "retaliation," the Court finds that these alleged complaints are likewise not protected speech.  For example, Plaintiff complains that she was denied office supplies or adequate space for public review of requested documents as part of a pattern of opposition to records requests at City Hall. (*Id*. ¶ 22.)  This allegation clearly relates to Plaintiff's job responsibilities and any complaints she may have raised implicate her ability to perform her job.  Furthermore, Plaintiff alleges that she complained about a lack of policies and procedures in the City Attorney's Office but did so as part of her complaints about "disparate treatment" and "workplace abuse." (*Id*. ¶ 25.)

15

Specifically, the Amended Complaint alleges that "Handy-Clay brought to the City Attorney's attention the need for across the board policies and procedures to regulate office protocol and avoid disparate treatment." (*Id.*)[35]  These allegations, ambiguous as they are, relate to the operation of the City Attorney's Office and Plaintiff's belief that she was the target of unfair treatment from other employees, apparently Defendant Porter, because she spoke out about delays in complying with requests for public records.  Plaintiff's complaints of "misrepresentation of job functions and positions" apparently addressed similar concerns (*Id.* ¶ 36.)[36]  The Court holds that these complaints of "disparate treatment" related to Plaintiff's job duties as Public Records Coordinator, not to her protected speech as a private citizen.

For the same reasons, Plaintiff's complaints about "retaliation" do not rise to the level of protected speech.  The Amended Complaint repeatedly mentions "retaliation" in connection with complaints about delay in producing public records and abuse of city leave policy by City employees.[37]  The Amended Complaint never states which employees abused leave policy or

---

[35] *See also* Am. Compl. ¶ 27 (Plaintiff later "requested from Jefferson, and then Porter, a copy of the official City Attorney's office internal policies and procedures, and received no response."); and ¶ 50 (Plaintiff "reported workplace abuse, lack of policies and procedures in the City Attorney's office, and retaliation" to the City's EEOC office.).

[36] *See also id.* ¶ 31 (Defendant "Porter and another attorney in the office, then restructured the office organizational chart to transfer supervision of Handy-Clay from the Sr. City Attorney to Porter herself.").

[37] *Id.* ¶ 30 ("During this time, Handy-Clay raised her complaints regarding a pattern of obstruction by some city officials in complying with open records requests, *retaliation*, and abuse of city leave and payment policies by some city employees. . . ."); ¶ 32 ("When Veronica Coleman-Davis became Acting Deputy City Attorney thereafter, Handy-Clay again raised complaints about the *retaliation*, and the 'culture of concealment' at city hall."); ¶ 33 ("In October 2009, Handy-Clay went to Ms. Julian Mabry, with city payroll, to inquire about the city's practices for employee payroll and time-keeping, *due to the retaliation*. . . ."); ¶ 38 ("Thereafter, on or about October 27, 2009, Handy-Clay met with City Attorney Morris

what form the retaliation against Plaintiff took.[38]  Plaintiff's FOIA requests sought payroll and leave records specifically for employees in the City Attorney's Office (*Id.* ¶¶ 52, 55, 56), giving rise to the inference that the retaliation came from the City Attorney's Office, Plaintiff's own department.  Plaintiff does allege that she never received compensation time for hours she had to work "late to fulfill public records requests" because she was informed that she was not entitled to it. (*Id.* ¶ 47.)  However, when Plaintiff later learned that other employees were receiving compensation time for overtime hours, Plaintiff requested approval of compensation time from Defendant Porter. (*Id.*)  The Amended Complaint does not state whether those requests were approved or whether the requests for compensation time were proper under the City's leave policy.  The Court finds that in so far as Plaintiff alleges retaliation for complaints about abuse of the leave policy in the City Attorney's Office, Plaintiff has failed to allege facts that would state a First Amendment retaliation claim.  Plaintiff's general complaints were confined to her own department and allegedly addressed the preferential treatment she did not receive in retaliation for her efforts to comply with public records requests.  Construing the factual allegations of the

---

regarding her report of the abuse city leave policies, and *retaliation*. . . ."); ¶ 42 ("During this time, Handy-Clay repeatedly asked Morris to address the *retaliation*, and abuse of city leave policies, but nothing was done."); ¶ 43 ("Thereafter, Handy-Clay met with City Councilman Myron Lowery to report abuse of city leave policies, conflicts of interests, and *retaliation*."); ¶ 49 ("In August 2010, Handy-Clay again reported to Morris the *retaliation in the office* and the need for office policies to guard against abuses."); ¶ 50 ("On August 25, 2010, Handy-Clay reported workplace abuse, lack of policies and procedures in the City Attorney's office, and *retaliation* to Mr. Antonio Adams, with the City's EEOC office."); ¶ 52 ("After repeatedly being stonewalled by Morris in her efforts to expose and confront the abuses and *retaliation*, Handy-Clay submitted two of her own Freedom of Information Act "FOIA" requests. . . .") (emphasis added).

[38] It is possible to infer from the Amended Complaint that Plaintiff complained about Jefferson abusing the leave policy and that he retaliated against her somehow although Plaintiff never alleges this directly.  *See id.* ¶ 31.

Amended Complaint in a light most favorable to Plaintiff, the complaints concerned her private interests as Public Records Coordinator and an employee of the City Attorney's Office, not as a concerned citizen.

Finally, according to the Amended Complaint, Plaintiff's complaints about abuse of leave only named one employee engaging in possible abuses, City Attorney Herman Morris himself. (*Id.* ¶ 44.)  With respect to Morris' absences, the Amended Complaint alleges, "The absence of Morris from the office caused delays in promptly responding to the public's open records requests." (*Id.* ¶ 45.)  In fact, Plaintiff's first FOIA request sought payroll and leave records for Morris in particular. (*Id.* ¶ 52.)[39]  Accepting these allegations as true, the Court finds that Plaintiff's complaints about Morris' attendance were "matters of personal interest" for Plaintiff that related to her job duties.  Morris' absences allegedly affected Plaintiff's ability to process requests for records in a timely fashion.  With respect then to Plaintiff's complaints about Morris' absences, the Amended Complaint fails to allege facts that would entitle Plaintiff's speech to First Amendment protection.

Plaintiff emphasizes that her speech was protected simply because it addressed matters of public concern.  Plaintiff has cited for support *Wooley v. Madison County, Tennessee*, a case decided by another member of this Court.[40]  However, *Wooley* is distinguishable, largely because

---

[39] Defendants have argued that a FOIA request cannot constitute protected speech for purposes of the First Amendment.  Because Plaintiff's complaints took other forms at other times, the Court finds that Plaintiff's FOIA request is not dispositive.  *See also Shefcik v. Village of Calumet Park*, 532 F. Supp. 2d 965, 976 (N.D. Ill. 2007) ("Because there is no indication from the record that Officer Shefcik filed the August 2006 FOIA request as the union president rather than in his capacity as a police officer, this FOIA request does not survive the *Garcetti* test.").

[40] 209 F. Supp. 2d 836 (W.D. Tenn. 2002) (Gibbons, J.).

that decision never considered whether the plaintiff-employee spoke as private citizen or in her official capacity as a Madison County employee.[41]  The Court in *Wooley* simply held that the plaintiff-employee's speech, complaints about the overcompensation of public employees, touched a matter of public concern and then went on to consider the other elements of the plaintiff's § 1983 claim.[42]  Notably, *Wooley* was decided before the Supreme Court held in *Garcetti* that a public employee must speak as a citizen and address matters of public concern in order to receive First Amendment protection.  The Sixth Circuit has described *Garcetti*'s as a "more demanding standard" than those previously announced in First Amendment retaliation cases.[43]  Additionally, the record in *Wooley* indicated that plaintiff's complaints led to a criminal investigation by the Tennessee Bureau of Investigation and plaintiff gave statements to authorities, all before Madison County terminated her employment.[44]  For these reasons the Court finds *Wooley* distinguishable on its facts and in its application of the law.

Having considered the allegations of the Amended Complaint and construed those allegations in the light most favorable to Plaintiff, the Court holds that Plaintiffs has failed to state a plausible claim for retaliation in violation of her First Amendment right to free speech.

---

[41] *Id*. at 842 ("To establish that her speech was constitutionally protected, a plaintiff must show that she spoke on matters of public concern and that her interest in speaking was not outweighed by the defendants' interest in promoting the efficient operation of the public service which they perform.") (citing *Connick*).

[42] *Id*. at 843.

[43] *Garner v. City of Cuyahoga Falls*, No. 08-3312, 311 F. App'x 896, 901, 2009 WL 426078, at *5 (6th Cir. Feb. 23, 2009) ("Garner points to several non-precedential cases decided before *Garcetti* in support of his position. None of those cases, however, involves analogous factual allegations or is really relevant in light of the more demanding standard recently articulated by *Garcetti*.").

[44] *Wooley*, 209 F. Supp. 2d at 840-41.

Therefore, Defendants' Motions to Dismiss Plaintiff's First Amendment claims are **GRANTED**.

### B. Denial of Due Process Liberty Interests in Violation of Fourteenth Amendment

Plaintiff's Amended Complaint makes brief reference to her liberty interests guaranteed by the Fourteenth Amendment.[45]  The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in her reputation, good name, honor and integrity.[46]  A non-tenured, public employee is entitled to an opportunity to clear her name where she shows that she "has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate h[er] employment."[47]  In order to show a deprivation of a liberty interest that would entitle the employee to a name-clearing hearing, a plaintiff must show that (1) the stigmatizing statements were made in conjunction with the plaintiff's termination from employment; (2) the employer did not merely allege improper or inadequate performance, incompetence, neglect of duty or malfeasance; (3) the stigmatizing statements or charges were made public; (4) the plaintiff claims that the charges made against her were false; and (5) the public dissemination must have been voluntary.[48]  "[A] plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due

---

[45] *See* Am. Compl. ¶¶ 99,100.  Despite the very limited mention of the Fourteenth Amendment and the fact that only one Defendant actually briefed the cause of action, the Court will nevertheless consider whether Plaintiff has stated this claim.

[46] *Chilingirian v. Boris,* 882 F.2d 200, 205 (6th Cir. 1989) (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

[47] *Garner*, 311 F. App'x at 901 (quoting *Burkhart v. Randles,* 764 F.2d 1196, 1201 (6th Cir. 1985)).

[48] *Ludwig v. Bd. of Trs. of Ferris State Univ.,* 123 F.3d 404, 410 (6th Cir. 1997).

process."[49]

The Court holds that Plaintiff has failed to allege all of these elements of her Fourteenth Amendment liberty interest claim.  More specifically, Plaintiff has not alleged that the public comments about her termination included anything more than her allegedly "improper or inadequate performance."  According to the Amended Complaint, City CAO Little addressed the media and stated that Plaintiff was terminated for failure to follow unspecified policies and procedures and for a poor attendance and leave record.[50]  The Court finds that these allegations concern "merely improper or inadequate performance" and are not otherwise defamatory.  More critically for Plaintiff's claim, the Amended Complaint does not allege that Plaintiff ever requested a name-clearing hearing from the City.  The defect is all the more problematic as Plaintiff has already amended her pleadings once and still failed to make a proper allegation.[51] For these reasons, the Court concludes that Plaintiff has failed to state her Fourteenth Amendment claim.  Therefore, Defendants' Motions to Dismiss this claim are **GRANTED**.

## III.   Plaintiff's Claims Under Tennessee Law

Plaintiff has alleged a series of other claims pursuant to Tennessee statute and common law.  Where the Court has original jurisdiction over a claim, the Court may exercise its

---

[49] *Brown v. City of Niota,* 214 F.3d 718, 723 (6th Cir. 2000).  *See also Quinn v. Shirey,* 293 F.3d 315, 323 (6th Cir. 2002).

[50] *See* Am. Comp. ¶ 59.

[51] *Garner*, 311 F. App'x at 900-901 ("In this instance Garner had a full opportunity to amend his pleading further to assert that he did request a hearing- *if* that were indeed so. It is more than relevant that Garner had already amended his original Complaint once, so that his counsel knew perfectly well that a further amendment was available to respond to an asserted deficiency, but instead he chose to stand pat.  It must be concluded on the record before us that a request for a hearing was never made.") (emphasis in original).

21

supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.[52]  The Court is vested with the further discretion to decline to exercise supplemental jurisdiction under certain circumstances.[53]  This includes an instance when "the district court has dismissed all claims over which it has original jurisdiction."[54]  Generally, if a federal claim is dismissed before trial, the state claim should be dismissed as well.[55]  The Court has held that Plaintiff has failed to state plausible § 1983 claims against any Defendant.  Having dismissed the claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction to hear Plaintiff's remaining state law claims.  This matter was filed on December 22, 2010, and Plaintiff filed her Amended Complaint on January 19, 2011.  Furthermore, no discovery has taken place, and the Court has not even entered a schedule.  Therefore, the Court finds that supplemental jurisdiction over Plaintiff's state law claims is not warranted.  Those claims are dismissed without prejudice to re-file.

## CONCLUSION

The Court holds that Plaintiff has failed to state a claim for retaliation for the exercise of her First Amendment rights.  Plaintiff has failed to allege facts that her complaints about certain problems in the City Attorney's office were made in her capacity as private citizen, and not simply as the City's Public Records Coordinator.  Likewise, Plaintiff has failed to state her Fourteenth Amendment due process claims for denial of a name-clearing hearing.  In light of the

---

[52] 28 U.S.C. § 1367(a).

[53] 28 U.S.C. § 1367(c).

[54] 28 U.S.C. § 1367(c)(1) & (3).

[55] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992).

Court's dismissal of her only federal law claims, the Court declines to exercise supplemental

jurisdiction over her remaining state law claims and dismisses those claims without prejudice.

      **IT IS SO ORDERED.**

                                           **s/ S. Thomas Anderson**
                                           S. THOMAS ANDERSON
                                           UNITED STATES DISTRICT JUDGE

                                           Date: April 8, 2011.