IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| BRIDGETT HANDY-CLAY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-2927-STA-tmp |
| | ) | |
| CITY OF MEMPHIS; | ) | |
| MAYOR AC WHARTON, individually | ) | |
| and in his official capacity; | ) | |
| HERMAN MORRIS, individually and | ) | |
| in his official capacity as | ) | |
| CITY ATTORNEY; and | ) | |
| CATHY PORTER, individually and | ) | |
| in her official capacity as | ) | |
| SENIOR LEGAL ADMINISTRATOR, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**ORDER DENYING DEFENDANT CATHY PORTER'S MOTION TO DISMISS**
_____

Before the Court is Defendant Cathy Porter's Motion to Dismiss (D.E. # 111) filed on May 3, 2013. Plaintiff Bridgett Handy-Clay has responded in opposition (D.E. # 113), and Porter has filed a reply (D.E. # 118). For the reasons set forth below, Porter's Motion is **DENIED**.

## BACKGROUND

On January 21, 2011, Plaintiff filed her amended complaint alleging among other things a cause of action under 42 U.S.C. § 1983 for violation of her First Amendment rights.[1] The Amended Complaint alleges that Plaintiff was dismissed from her position as the City of Memphis's public

---

[1] Plaintiff amended her complaint on January 21, 2011, though the amended pleadings are not entirely relevant to the Court's analysis of the instant Motion.

1

records coordinator in retaliation for the exercise of her constitutional right to free speech. As a result, Defendants' actions deprived Plaintiff of her First Amendment rights to freedom of speech, specifically her freedom to speak on matters of public concern.

According to the Amended Complaint, on July 4, 2007, Plaintiff was appointed public records coordinator for the City of Memphis. (Am. Compl. ¶ 12.) As public records coordinator, Plaintiff was responsible for ensuring that each request for records made pursuant to the Tennessee Open Records Act was forwarded to the appropriate records custodian and processed in a timely manner. (*Id*. ¶ 13.) When Plaintiff assumed her post in 2007, Tennessee law required that records requests be fulfilled within five (5) days; the time was later extended to seven (7) days. (*Id*. ¶ 18.) The Amended Complaint alleges that the volume of public records requests increased substantially after Plaintiff entered the job and continued to increase throughout her tenure. (*Id*. ¶ 16.)

Initially, Plaintiff met with then-city attorney Elbert Jefferson ("Jefferson") on a weekly basis to discuss records requests. (*Id*. ¶ 19.) Subsequently, Defendant Cathy Porter ("Porter") began to cancel or reschedule Plaintiff's weekly meetings with Jefferson. (*Id*.) As a result, Plaintiff submitted the requests to Porter who would in turn bring them to Jefferson's attention. (*Id*.) Because of the change in protocol, Plaintiff began to receive complaints from the Memphis Commercial Appeal and other parties requesting records about delays in processing records requests. (*Id*. ¶¶ 19, 20.) According to Plaintiff, despite her efforts to get records released, she continued to experience resistance from Jefferson, Porter, and others in city government. (*Id*. ¶¶ 20, 22.)

The Amended Complaint alleges that "there was an entrenched culture at City Hall to disclose only the bare minimum needed to comply" with requests and further to conceal as much as possible. (*Id*. ¶ 24.) Plaintiff contends that she suffered "interference, retaliation and disparate

treatment" for her efforts to comply with records requests. (*Id*.) With specific reference to Porter, the Amended Complaint alleges that during Jefferson's leave of absence as city attorney, Porter restructured the office organizational chart to transfer supervision of Plaintiff from the senior city attorney to herself. (*Id*. ¶ 31.) Thereafter, Veronica Coleman-Davis ("Coleman-Davis") became acting deputy city attorney, and Plaintiff voiced her complaints to Coleman-Davis about the retaliation Plaintiff suffered and the "culture of concealment." (*Id*. ¶ 32.)

On October 10, 2009, newly-elected Mayor AC Wharton issued an executive order establishing standards of performance for transparent and open city government, emphasizing the importance of access to public records. (*Id*. ¶ 34.) On October 21, 2009, Defendant Herman Morris ("Morris") was sworn in as city attorney in the new administration. (*Id*. ¶ 35.) The following day, Plaintiff sent Morris an email again raising her concerns about the misuse of time by city employees and other job duties. (*Id*. ¶ 36.) Plaintiff met with Morris about these issues on October 27, 2009, but alleges that Morris never took any action. (*Id*. ¶ 38.)[2] Plaintiff observed that Morris was frequently absent from the office and concluded that Morris was abusing the leave system in his own right. (*Id*. ¶¶ 44, 45.) Morris' absences led to delays in fulfilling records requests related to the Commercial Appeal's investigation of city vehicle repair contracts. (*Id*. ¶ 46.)[3] Plaintiff alleges that Porter pressured her not to go to the division where the documents relating to certain records requests

---

[2] Plaintiff also met with Myron Lowery, a member of the Memphis City Counsel who had served as Mayor Pro Tempore, and reported her concerns about leave abuses and retaliation. (*Id*. ¶ 43.)

[3] Plaintiff alleges that she worked long hours but was advised that she was not entitled to compensation. (*Id*. ¶ 47.) Later Plaintiff learned that other employees did receive additional compensation, and so Plaintiff approached Porter for approval of compensation. (*Id*.) The Amended Complaint does not indicate whether Plaintiff's requests to Porter were approved or denied.

3

were kept, although Morris had approved the document release. (*Id*. ¶ 48.) When Plaintiff threatened to report Porter's comments to Morris, Porter relented. (*Id*.) Plaintiff continued to complain about retaliation in the City Attorney's Office and even went to Antonio Adams with the City's EEOC office. (*Id*. ¶ 50.) Adams referred Plaintiff back to Morris. (*Id*.) But Morris did not address Plaintiff's complaints. (*Id*. ¶ 51.)

Plaintiff responded on August 26, 2010, by filing her own records requests with the City, seeking documents on vacation, sick and bonus time, time sheets, docked pay, personnel files, and payroll check requests for City Attorney's Office staff, including Morris. (*Id*. ¶ 52.) Plaintiff made her requests known by email to a number of City employees and offices. (*Id*. ¶¶ 53, 54.) On August 27, 2010, Plaintiff met with Quinton Robinson in the City's Human Resources department and explained her concerns about abuse of leave in City Hall. (*Id*. ¶ 55.) Later the same day, Plaintiff submitted a second records request for payroll records for employees in the City Attorney's Office. (*Id*. ¶ 56.) Approximately two hours later, Morris handed Plaintiff a termination letter signed by Mayor Wharton. (*Id*. ¶ 57.) Plaintiff was dismissed without any investigation. (*Id*.)

On April 8, 2011, the Court granted Defendants' separate Rule 12(b)(6) motions, concluding that Plaintiff had failed to state any of her claims based on federal law and declining to exercise supplemental jurisdiction over her state law claims.[4] The Court reasoned that Plaintiff had failed to plead facts that she made her complaints about public records requests and abuses of time-off in her capacity as a private citizen.[5] On September 26, 2012, the Sixth Circuit reversed the Court's

---

[4] *Handy-Clay v. City of Memphis*, No. 10-2927-STA, 2011 WL 1344236 (W.D. Tenn. Apr. 8, 2011).

[5] The Court specifically declined to reach the issue of whether Plaintiff's speech touched a matter of public concern. Order Granting Defs.' Mot. to Dismiss 12–13 (D.E. # 61).

judgment on this issue and remanded for further proceedings. In its opinion, the Sixth Circuit held that the Court had properly dismissed Plaintiff's First Amendment retaliation claims as to the following categories of speech: "retaliation,"[6] "workplace abuse" or "lack of policies and procedures,"[7] and complaints about obstacles interfering with her ability to produce records.[8] However, the Sixth Circuit held that construing the allegations of the Amended Complaint in a light most favorable to Plaintiff, Plaintiff's speech concerning the violation of city leave policy in the city attorney's office was protected speech.[9] The Sixth Circuit went on to conclude that Plaintiff had "alleged sufficient facts to support her claim that she engaged in constitutionally protected conduct that motivated her supervisors to engage in an adverse action against her . . . ."[10]

In the Motion before the Court, Porter argues that she is entitled to qualified immunity as to Plaintiff's claims against her in her individual capacity. Porter originally raised this issue in her Rule 12(b)(6) motion, which the Court had granted on other grounds and which the Sixth Circuit has reversed in part. Under the circumstances, Porter correctly contends that the Court has never addressed the question of her qualified immunity. Porter argues that she is entitled to qualified

---

[6] *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 541 (6th Cir. 2012) ("We can dispose of the fourth category, Handy–Clay's 'retaliation' complaints, because they state a legal conclusion with insufficient factual context to evaluate the plausibility of her claim.").

[7] *Id.* ("For similar reasons, we can dispose of the second category, Handy–Clay's general allegations of 'workplace abuse' or 'lack of policies and procedures.'").

[8] *Id.* ("Next, it is clear under *Garcetti* [*v. Ceballos*, 547 U.S. 410 (2006)], as well as our subsequent opinions applying *Garcetti,* that the first category of speech—complaints about obstacles interfering with her ability to produce records–is not protected.").

[9] *Id.*

[10] *Id.* at 546.

5

immunity from Plaintiff's First Amendment claim because at the time of Plaintiff's termination, the law was not clearly established that Plaintiff's public records requests were protected speech. Porter asserts that there is no constitutional right to obtain all of the information provided by FOIA laws and that there is no constitutional right to governmental information generally. As such, a reasonable public official would not have been on notice that the denial of Plaintiff's records request was protected speech because Plaintiff's right to obtain the records was not clearly established. Therefore, Porter contends that she is entitled to qualified immunity on this claim.

Plaintiff has filed a response in opposition to Porter's Motion.[11] Plaintiff cites the Sixth Circuit's analysis of each Defendant's awareness of Plaintiff's protected activity. With respect to Porter, the panel concluded that

> there is enough evidence in the record to support the proposition that the defendants knew of Handy-Clay's protected speech. There is no question that Morris knew about her complaints, because she spoke directly to him multiple times and copied him on her e-mail regarding her final record requests. Although Handy-Clay did not assert that she directly addressed Porter about misconduct and corruption in the City Attorney's office, copies of the record requests attached to the complaint reveal that Porter was indeed included on that e-mail.[12]

Plaintiff further argues that her protected activity was not limited to the records request that immediately preceded her termination in August 2010 but included a series of complaints made to a number of city officials leading up to her dismissal. Based on the well-pleaded allegations of her Amended Complaint, Plaintiff argues that Porter was aware of Plaintiff's

---

[11] Plaintiff first argues that the Sixth Circuit has already ruled on the issue of qualified immunity. Plaintiff has not cited a specific portion of the Sixth Circuit's opinion to support this claim, and the Court finds that it is without merit. The issue of qualified immunity has never been addressed in this case.

[12] *Id.* at 545–46.

protected speech. Furthermore, Plaintiff responds that her constitutionally-protected speech was clearly established. Plaintiff cites authority for the proposition that "a public employee's right to speak on matters of public concern without facing improper government retaliation" is well-established. Based on this authority, Plaintiff argues that Porter's Motion must be denied.

In her reply, Porter maintains that the Amended Complaint alleges no facts to show that Porter was aware of any of Plaintiff's protected speech, except for the records requests Plaintiff submitted via email on August 2010. Porter reiterates her contention that Plaintiff's protected activity was the act of requesting public records, and not opposing certain practices in the city attorney's office. The right to obtain public records was not a clearly established constitutional right at the time of Plaintiff's termination. Therefore, Porter argues that she is entitled to qualified immunity from Plaintiff's § 1983 claim for First Amendment retaliation.

## STANDARD OF REVIEW

As an initial matter, Porter renews her Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the issue of qualified immunity. In point of fact, the pleadings in this matter are now closed, and Plaintiff's Motion is properly analyzed as a motion for judgment on the pleadings under Rule 12(c). Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[13] Motions for judgment on the pleadings may be granted where

---

[13] Fed. R. Civ. P. 12(c).

7

the moving party "is entitled to judgment as a matter of law."[14] Just as with Rule 12(b)(6) motions, the Court must consider a Rule 12(c) motion by taking all the "well-pleaded material allegations of the pleadings of the opposing party" as true.[15] A pleading's factual allegations must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible.[16] However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient.[17] Thus, although the factual allegations need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."[18]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[19] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of

---

[14] *Coyer v. HSBC Mortgage Servs., Inc.*, 701 F.3d 1104, 1107 (6th Cir. 2012).

[15] *Id.*

[16] *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

[17] *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir.2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007));

[18] *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly,* 550 U.S. at 555).

[19] Fed. R. Civ. P. 8(a)(2).

action."[20] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]

## ANALYSIS

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[23] In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."[24] "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."[25]

A government official sued under § 1983 may raise the defense of qualified immunity.[26]

---

[20] *Iqbal,* 556 U.S. at 681; *Twombly,* 550 U.S. at 555; *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[21] *Twombly*, 550 U.S. at 555, 570.

[22] *Iqbal,* 556 U.S. at 678.

[23] 42 U.S.C. § 1983.

[24] *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[25] *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[26] *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012).

Government officials, including municipal employees, are immune from civil liability unless, in the course of performing their discretionary functions, they violate a plaintiff's clearly established constitutional rights.[27] Where as here the defendant raises the qualified immunity defense on the pleadings, the facts alleged in the pleadings must demonstrate that (1) the defendant violated a constitutional right and (2) the right was clearly established.[28] The Court has the discretion about which of these showings to address first.[29] Once the defendant raises the qualified immunity defense, the burden shifts to the plaintiff to show that the defense is unwarranted.[30]

In the Motion before the Court, Porter claims qualified immunity from Plaintiff's claims against her in her individual capacity. Specifically, Porter asserts that Plaintiff's constitutional right to obtain public records was not clearly established at the time of Plaintiff's termination in August 2010. Plaintiff responds that at issue is her constitutional right to speak out on matters of public concern, which was clearly established at the time of her termination. The first issue presented then is which constitutional right Porter is alleged to have violated. The Court finds that the constitutional right Porter allegedly violated was Plaintiff's constitutional right to speak out on matters of public concern, not a constitutional right to obtain public records based on open records laws. As previously discussed, the Sixth Circuit has held that the only well-pleaded protected speech claim in this case concerns Plaintiff's remarks about the violation of city leave policy in the city

---

[27] *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006).

[28] *Sutton*, 700 F.3d at 871 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

[29] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (allowing courts the discretion to decide which of the two steps in the qualified-immunity analysis should be addressed first).

[30] *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011).

attorney's office. The Sixth Circuit stated, "Handy–Clay has pleaded factual allegations sufficient to establish that she engaged in constitutionally-protected conduct when she spoke to various public officials regarding allegations of misconduct and corruption in the City Attorney's office."[31] The Sixth Circuit further concluded that Porter and other Defendants were aware of Plaintiff's protected speech and that Plaintiff suffered an adverse action when the City of Memphis terminated her employment. With specific reference to Porter, the Sixth Circuit noted that "[a]lthough Handy–Clay did not assert that she directly addressed Porter about misconduct and corruption in the City Attorney's office, copies of the record requests attached to the complaint reveal that Porter was indeed included on that e-mail."[32] The Sixth Circuit concluded that "Handy–Clay has alleged sufficient facts to support her claim that she engaged in constitutionally protected conduct that motivated her supervisors to engage in an adverse action against her . . . ."[33] The Court holds then that Plaintiff's protected speech claim is based on her remarks about the violation of city leave policy, and not a violation of any right to obtain public records.

The Court finds Porter's theory on this point to be unpersuasive. Porter argues that the constitutional right at stake was only Plaintiff's right to obtain public records. According to Porter, the Amended Complaint does not allege that Porter was aware of Plaintiff's protected complaints about violations of city leave policy. Porter also argues that the Sixth Circuit opinion does not suggest "Porter was aware of any arguably protected speech other than the speech set forth in the

---

[31] *Handy-Clay*, 695 F.3d at 545.

[32] *Id.* at 546.

[33] *Id.*

11

emails containing the records requests."[34] Porter maintains then that the pleadings allege only that she was aware of Plaintiff's August 26, 2010 records request, not her prior complaints about violations of city leave policy. The Court finds that Porter's argument fails to accept all of the factual allegations of the Amended Complaint as true and construe the pleadings in the light most favorable to Plaintiff, as the Court must under Rule 12(c).[35] The Amended Complaint alleges that Porter had become Plaintiff's supervisor in the city attorney's office,[36] that Plaintiff made a number of complaints about violations of city policy in the city attorney's office, and that on August 26, 2010, Plaintiff emailed Porter and other city employees a request for leave records for the staff in the city attorney's office.[37] It is true that the Amended Complaint does not specify what role Porter had in Plaintiff's termination or that Porter's other conduct resulted in the adverse action against Plaintiff. However, Porter's Motion does not raise the issue of whether the pleadings have alleged that Porter violated Plaintiff's constitutional rights. Porter has merely argued that Plaintiff's constitutional right to obtain public records was not clearly established at the time of her termination.[38] Viewing the allegations of the Amended Complaint in the light most favorable to

---

[34] Def.'s Reply 2 (D.E. # 118).

[35] The Court stresses that Porter has raised her qualified immunity defense under Rule 12(c) and not under Rule 56. Therefore, the pleadings standard of Rule 12(c) governs the Court's analysis.

[36] Am. Compl. ¶ 31.

[37] *Id*. ¶¶ 52, 53, 54.

[38] *See* Def.'s Mot. to Dismiss 5 ("For the reasons discussed below, Defendant Porter asks that this court dismiss the § 1983 claim against her, in her individual capacity, on the ground that at the time of the challenged adverse decision, i.e., Plaintiff's termination on August 27, 2010, the law was not 'clearly established' that the Plaintiff's records requests were protected speech under the First Amendment to the United States Constitution.").

12

Plaintiff, it is plausible to infer that Porter was aware of Plaintiff's protected speech, and not merely her records request.

Moreover, Porter's argument on this point ignores the Sixth Circuit's construction of the Amended Complaint, which is now the law of the case. Because this case is on remand, this Court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court" including the Court of Appeals' construction of the pleadings.[39] Once the Court of Appeals "decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[40] As already mentioned, the Sixth Circuit concluded that the Amended Complained "alleged sufficient facts to support [Plaintiff]'s claim that she engaged in constitutionally protected conduct that motivated her supervisors to engage in an adverse action against her . . . ."[41] The Sixth Circuit specifically held that Plaintiff's email put Porter on notice of Plaintiff's protected speech, even though "Handy–Clay did not assert that she directly addressed Porter about misconduct and corruption in the City Attorney's office."[42] Therefore, the Court holds that Porter's proposed reading of the pleadings is precluded by the Sixth Circuit's opinion and construction of Plaintiff's Amended Complaint.

Having resolved the precise constitutional right at issue, the Court's inquiry becomes whether

---

[39] *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012) (citing *Hanover Ins. Co. v. Am. Eng'g Co.,* 105 F.3d 306, 312 (6th Cir. 1997)).

[40] *Goldberg*, 692 F.3d at 538 (citing *Scott v. Churchill,* 377 F.3d 565, 569–70 (6th Cir. 2004)).

[41] *Handy-Clay*, 695 F.3d at 546.

[42] *Id.*

Plaintiff's constitutional right to speak out on a matter of public concern such as violations of city policy was clearly established. For a right to be clearly established for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[43] The Supreme Court has cautioned that "[i]t is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."[44] "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."[45] In short, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable [state actor] that his conduct was unlawful in the situation he confronted."[46]

Applying these principles to the issue presented in this case, the question is whether it would be clear to a reasonable supervisor that terminating a subordinate for speaking out on matters of public concern was unlawful. To answer the question, the Court must "look first to the decisions of the Supreme Court, and then to the case law of this circuit in determining whether the right claimed was clearly established when the action complained of occurred."[47] The Sixth Circuit has

---

[43] *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[44] *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201) (internal quotation marks omitted).

[45] *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2084 (2011) (citing *Saucier*, 533 U.S. at 201–02)).

[46] *Saucier,* 533 U.S. at 202 (citing *Wilson v. Layne,* 526 U.S. 603, 615 (1999)).

[47] *Clemente*, 679 F.3d at 490 (quoting *Gragg v. Ky. Cabinet for Workforce Dev.,* 289 F.3d 958, 964 (6th Cir. 2002)).

14

emphasized that "the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances."[48] Plaintiff has the burden to demonstrate that her right was clearly established.[49]

The Court holds that Plaintiff has satisfied that burden here. It was clearly established at the time of Plaintiff's retaliation that "a public employee's right to speak on matters of public concern without facing improper government retaliation was settled: such statements are protected, even if later proven untrue, as long as they are not deliberately or recklessly false."[50] Indeed the Sixth Circuit held in its opinion that "[t]he Supreme Court has determined that the First Amendment protects a public employee's right, under certain circumstances, to speak as a citizen on matters of public concern."[51] The Court concludes that Plaintiff has met her burden to show that it would be clear to a reasonable supervisor that terminating a subordinate for speaking out on matters of public concern was unlawful. It follows that Plaintiff's constitutional right to speak out on matters of public concern was clearly established at the time of her termination. Therefore, Defendant's Motion must be **DENIED**.

---

[48] *Clemente*, 679 F.3d at 490 (citation and internal quotation marks omitted).

[49] *Id.*

[50] *See v. City of Elyria*, 502 F.3d 484, 495 (6th Cir. 2007); *see also e.g. Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 580 (6th Cir. 1997) ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern . . . ."); *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) ("The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional, and retaliation claims have been asserted in various factual scenarios.").

[51] *Handy-Clay*, 695 F.3d at 539 (citing *Garcetti,* 547 U.S. at 417).

**IT IS SO ORDERED.**

                                              **s/ S. Thomas Anderson**
                                              S. THOMAS ANDERSON
                                              UNITED STATES DISTRICT JUDGE

                                              Date: June 14, 2013.