**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | |
|---|---|
| **BRIDGETT HANDY-CLAY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   No. 10-2927-STA-tmp |
| | ) |
| **CITY OF MEMPHIS;** | ) |
| **MAYOR AC WHARTON, individually** | ) |
| **and in his official capacity;** | ) |
| **HERMAN MORRIS, individually and** | ) |
| **in his official capacity as** | ) |
| **CITY ATTORNEY; and** | ) |
| **CATHY PORTER, individually and** | ) |
| **in her official capacity as** | ) |
| **SENIOR LEGAL ADMINISTRATOR,** | ) |
| | ) |
| **Defendants.** | ) |

_____

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT CITY OF
MEMPHIS'S MOTION FOR SUMMARY JUDGMENT;
ORDER GRANTING DEFENDANT CATHY PORTER'S MOTION FOR SUMMARY
JUDGMENT; and
ORDER DENYING DEFENDANT HERMAN MORRIS, JR.'S MOTION FOR
SUMMARY JUDGMENT**

_____

Before the Court are Defendant City of Memphis's Motion for Summary Judgment (D.E. #

129) and Defendants Herman Morris, Jr. and Cathy Porter's separate Motions for Summary

Judgment on claims against them in their individual capacities (D.E. # 122, 125), all filed on June

15, 2013.  Plaintiff Bridgett Handy-Clay has responded in opposition (D.E. # 136) to Defendants'

1

Motions, and Defendants have filed reply briefs (D.E. # 150, 151).[1]  On September 12, 2013, the Court conducted a pretrial conference in this matter and heard oral arguments on Defendant's Motions for Summary Judgment.  Trial is set to commence on September 30, 2013.  For the reasons set forth below, Defendant City of Memphis's Motion for Summary Judgment is **GRANTED in part, DENIED in part**; Defendant Cathy Porter's separate Motions for Summary Judgment is **GRANTED**, and Defendants Herman Morris, Jr.'s Motion for Summary Judgment is **DENIED**.

<u>**BACKGROUND**</u>

The Amended Complaint alleges that Plaintiff Bridgett Handy-Clay suffered retaliation for exercising her free speech rights in violation of the First Amendment.  Plaintiff claims that Defendants City of Memphis, Herman Morris, Jr., and Cathy Porter are liable for the violation of her constitutional rights pursuant to 42 U.S.C. § 1983.  Defendants now seek judgment as a matter of law on Plaintiff's claims.

Pursuant to Local Rule 56.1(a), Defendants have prepared a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute."[2]  For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or

---

[1] Plaintiff filed a motion for leave to file a response to Defendant's reply briefs (D.E. # 152), which Defendants opposed (D.E. # 153, 154).  Construing Plaintiff's motion as a request to file a sur-reply, the Court denied the motion but stated that it would consider the arguments raised in her motion as well as the briefs filed by Defendants to decide Defendants' Rule 56 Motions.  Order Granting in Part, Denying in Part Plaintiff's Mot. for Leave to File Resp. Aug. 22, 2013 (D.E. # 156).

[2] Local R. 56.1(a).

that the adverse party has failed to produce admissible evidence to support a fact.[3]  As the non-moving party, Plaintiff must respond to Defendants' statements of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed."[4]  Additionally, Plaintiff may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[5]  Where Plaintiff asserts that a genuine dispute of material fact exists, Plaintiff must support her contention with a "specific citation to the record."[6]  If Plaintiff fails to demonstrate that a fact is disputed or simply fails to address Defendants' statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motion.[7]  Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record."[8]

**I. Factual Background**

The Court finds that there is no genuine dispute as to the following material facts, unless

---

[3] Fed. R. Civ. P. 56(c)(1).

[4] Local R. 56.1(b).

[5] Fed. R. Civ. P. 56(c)(2).

[6] Local R. 56.1(b).

[7] Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

[8] Fed. R. Civ. P. 56(c)(3).

otherwise noted.[9]  Plaintiff was appointed as the public records coordinator for the City of Memphis

in the City's law division in 2007.  (Indiv. Defs.' Statement of Undisputed Fact ¶ 1.)  Mayor W. W.

Herenton appointed Plaintiff as an at will-and-pleasure employee.  (*Id.* ¶ 2.)  Plaintiff's duties as

public records coordinator consisted of gathering records in response to public records requests.  (*Id.*

¶ 3.)  At all times relevant, Plaintiff had to report her arrival time at work and her departure time to

Cathy Porter ("Porter"), the senior legal administrator in the law division.  (*Id.* ¶ 6.)  Porter was the

designated time-keeper and entered all time for employees in the City Attorney's Office.  (Pl.'s

Statement of Add'l Fact ¶ 1.)

**A. Problems Prior to Herman Morris's Tenure as City Attorney**

It is undisputed in this case that friction existed between Plaintiff and Porter over Plaintiff

reporting her time to Porter.  During the tenure of then-City Attorney Elbert Jefferson, Plaintiff

complained to Jefferson about her problems with Porter over reporting time and her related concerns

over other employees not reporting their time.  ( Handy-Clay Dep. 243:17–22.)  For example, when

Jefferson told Plaintiff about Porter reporting her for arriving to work late, Plaintiff responded,

---

[9] Defendants Morris and Porter have submitted identical statements of undisputed fact in support of their Motions for Summary Judgment (D.E. # 122-2, 125-2). Defendant City of Memphis has submitted a separate statement of undisputed fact with its Motion for Summary Judgment (D.E. # 129-1).  Plaintiff has filed responses to all sets of statements of fact (D.E. # 136-1, 136-3).  While the Court has reviewed all of the fact briefing filed by the parties, the Court's recitation of the undisputed evidence is largely taken from the statement of facts submitted by the individual Defendants and Plaintiff's responses.  By and large the facts submitted by the City of Memphis were already included in the facts asserted by Defendants Morris and Porter.

Additionally, the Court has included here only those facts material to the issues presented at summary judgment.  Plaintiff has filed her own statement of additional facts.  However, the Court finds that by and large the statements are not relevant to the Court's summary judgment analysis and therefore declines to consider them here.

"Well, so does she and plenty more of the employees." (*Id.* at 243:23–244:2).[10]  On a separate

occasion on or around August 5, 2009, Porter emailed Plaintiff, reminding her to report her time.

(Indiv. Defs.' Statement of Undisputed Fact ¶ 7.)  Plaintiff responded by email and asked if all city

attorney office employees were required to sign in and out.  (*Id.*)  Porter forwarded Plaintiff's email

to Gerald Thornton, the senior assistant city attorney who was assigned at that time to oversee

Plaintiff's daily work as public records coordinator.  (*Id.*)  Porter explained to Thornton that Plaintiff

was only reporting her time when Porter actually sent Plaintiff an email requesting that she do so.

(*Id.*)  Thornton responded to Porter's email, stating that he would handle the situation on his return

and would not tolerate insubordination.  (*Id.*)[11]  Plaintiff also testified that on one occasion, Thornton

spoke to her about her coming in late, to which she replied, "And so are you."  (Handy -Clay Dep.

69:2–10.)  Plaintiff also stated to Thornton, "How is it I am being singled out about coming to work

late when you all are coming to work late?"  (*Id.* at 69:22–70:3.)

     The problems between Plaintiff and Porter continued into the tenure of Mayor Pro Tem

Myron Lowry and then-Deputy City Attorney Veronica Coleman-Davis.[12]  On September 3 and 4,

---

[10] Plaintiff went on to testify that "It wasn't just about what Ms. Porter did.  It was the office as a whole. . . . Ms. Porter was not that big of a factor . . . . She just happened to be the person that was opposing me."  *Id.* at 246:15–22.

[11] Plaintiff responds to Defendants' statements about Porter's emails to Thornton as follows: "The Plaintiff can neither admit or deny this as she was not privy to the emails between Porter and Thornton."  Pl.'s Resp. to Defs.' Statement ¶ 7.  As previously discussed, Plaintiff must show at summary judgment that a genuine dispute of material fact exists to preclude summary judgment.  Plaintiff's response in this instance fails to make such a showing.  Thus, the Court finds that Defendants' statements about Porter's emails to Thornton are undisputed for purposes of summary judgment.

[12] The record shows that Councilman Lowry served and continues to serve as a member of the Memphis City Council.  Lowry Aff. ¶ 2 (D.E. # 125-4).  Councilman Lowry also served as Mayor Pro Tem from August 1, 2009, until October 19, 2009.  *Id.*  Coleman-Davis served as Deputy City Attorney from August 3, 2009, until October 23, 2009.  Coleman-Davis Aff. ¶ 2

5

2009, Plaintiff and Porter exchanged emails that were typical of efforts by Porter to remind Plaintiff of the correct procedure for reporting time. (Indiv. Defs.' Statement of Undisputed Fact ¶ 8.) Plaintiff and other non-lawyer personnel were required to report their time of arrival at work to Porter by email when the they arrived at the beginning of the work day and to report to Porter by email their time of departure from work at the end of the work day. (*Id.*) On September 4, 2009, Plaintiff responded to Porter's email and complained that not all employees were required to sign-in upon arrival and out upon departure via email on a daily basis. (*Id.*) According to Porter, this was a frequent response from Plaintiff to Porter's reminders. (*Id.*) Plaintiff responds to these contentions by asserting several additional facts. According to Plaintiff, there was no particular time designated for reporting time to Porter; on one occasion an employee went an entire week without reporting time and was not disciplined; Porter never disciplined anyone for tardiness; and employees sometimes would tell Porter that they had arrived at work and simply forgotten to send her their time report. (Pl.'s Resp. to Defs.' Statement ¶ 8.)

Sometime later in September 2009, Plaintiff met with Demar Roberts, the assistant to then-Chief Administrative Officer Jack Sammons under Mayor Pro Tem Lowry. (Handy-Clay Dep. 81:7–83:2.) Plaintiff reported "city attorney employees coming and going out of the office often," specifically during a two-week period when then City-Attorney Elbert Jefferson was absent from the office. (*Id.* at 83:21–24; 84:19–85:6.) Within a week of her meeting with Roberts, Plaintiff also spoke to Deputy City Attorney Coleman-Davis about the same issues. (Handy-Clay Dep. 86:1–4.) In October 2009, Plaintiff went to the payroll department and spoke with Julian Mabry about "retaliation" she believed she was suffering. (Handy-Clay Dep. 92:6–10.) Plaintiff explained that

---

(D.E. # 125-3).

she approached Mabry "because I was constantly being asked about my time, this particular time, when did you come in, and certain things that I notice that other exempt employees as a fact was[sic] doing the same." (*Id.* 92:15–18.) Plaintiff inquired about how time was reported to payroll and how payroll could verify time. (*Id.* at 93:5–12.) According to Mabry's deposition testimony, Plaintiff actually came to speak with her less than a month before Plaintiff's termination. (Mabry Dep. 13:20–14:4, Apr. 30, 2013.)

## B. Problems During Morris's Tenure as City Attorney

The Memphis City Council appointed Herman Morris, Jr. ("Morris") as City Attorney on October 20, 2009. (Morris Dep. 13:2–4, Apr. 24, 2013.) On October 22, 2009, Plaintiff addressed an email to Morris, which read as follows:

> Good evening and congratulations on your appointment to the City Attorney's Office.
>
> In view of [Morris's] e-mail below and your commitment to review, assess and react to issues relating to the City Attorney's office, let me be one of the first to express my concerns.
>
> On September 4, 2009, I meet [sic] with [former City Attorney] Jefferson to discuss the uncomfortable working environment being imposed on some City Attorney's employees including myself. By the end of the meeting Mr. Jefferson agreed to implement and enforce policies to eliminate our concerns and hopefully produce unity amongst the office employees. Our concerns are as followed [sic]:
>
> > 1. Favoritism- Some employees are allowed to come into the office and go as they please.
> > 2. Equality- Some employees are required to report their arrival and departure time daily and others are not required to do so.
> > 3. Trust - All employees were issued keys to the back door until a certain promotion was awarded.
> > 4. Misuse of City Time- Some employees are allowed to run personal errands without applying their vacation- bonus or sick time.
> > 5. Use of office equipment - Codes for color copies is [sic] only given to some people; the system we have I do believe can track possible misuse.
> > 6. Misrepresentation of job functions and positions.

In closing it is my desire that you do not view our concerns as being minute. Furthermore, I do not have the heart to continue on listing [sic] to complaints and not try to have them resolve [sic]. There is no way that this office will succeed if the employees are not honest, treat one another with respect and follow the vision of the City Attorney. I strongly advise you to use discernment and please give each and every employee an opportunity to speak with you. Our pass [sic] mistakes are avoidable.

When time permit [sic], I am available to further discuss these concerns.

(Indiv. Defs.' Statement of Undisputed Facts ¶ 9.)  Morris responded by email, stating "Thanks. I will follow up with you when things settle down a bit." (*Id.* ¶ 10.)

Plaintiff explained in her deposition that her concerns regarding "favoritism" and 'equality" in her October 22, 2009 email were based on the fact that non-lawyer personnel "had a leash on them" and "a timekeeper watching their back and the attorneys did not. " (*Id.* ¶ 11.)  Non-lawyer personnel also "had to report our time in, if we leave going in and out that door, had to sign in and out." (*Id.*)  Plaintiff testified that her concern regarding the "misuse of city time" was based on the fact that "[i]t wasn't done in my office across the board, so [she] felt that there was a problem that some [sic] was able to do it and some wasn't [sic]." (*Id.* ¶ 12.)  As for her concern over the "use of equipment color copier" and "possible misuse," Plaintiff did not have the code for the copier and felt that, as public records coordinator, she should have the code and not need to obtain a code from Porter or an attorney. (*Id.* ¶ 13.)  As for her concern over the "misrepresentation of job functions and positions," Plaintiff objected to changes in the organizational chart, which gave Porter additional assignments and supervision over Plaintiff. (*Id.* ¶ 14.)

During the first half of November 2009, Morris met with law division staff including Plaintiff. (*Id.* ¶ 16.)  In the meeting, Morris stressed that when Porter asked non-lawyer personnel to do things, Porter was speaking for and on behalf of Morris. (*Id.*)  Morris also emphasized that

he was a stickler for protocol and the chain of command.  (*Id.*)[13]  On November 20, 2009, Porter emailed a reminder to several law division employees, including Plaintiff, that "when receiving and responding to requests for information or tasks from" Porter, staff should remember that Porter was speaking on behalf of Morris and that Morris was a "stickler for protocol and the chain of command."  (*Id.* ¶ 17.)  Plaintiff's responded to Porter's email, asking "what is this about?"  (*Id.*)  When Porter answered that her email was self-explanatory, Plaintiff responded, "if the email was self-explanatory, I wouldn't asked [sic] what it was all about. However I will come and see you."  (*Id.*)

Sometime between October 22, 2009, and the end of November 2009, Plaintiff met with Morris and Porter on at least one occasion. (*Id.* ¶ 15.)[14]  During the meeting, they discussed Plaintiff's request for clarification about reporting to Porter, the organizational chart indicating that Porter was Plaintiff's supervisor, and Plaintiff's objection to reporting to Porter.  (*Id.*)  At her deposition, Plaintiff explained that she mainly presented her concerns about Porter "being away from the office and without reporting her time" and that Porter "was harassing me about situations that she was doing and I didn't think it was fair." (Handy-Clay Dep. 133:2–8.)  Plaintiff also told Morris about employees in the City Attorney's Office "coming and going in and out of the office running errands, signing off the log sheet, not signing back in." (*Id.* at 263:23–264:4.)  Morris

---

[13] Plaintiff disputes these contentions and states that she does not recall them from any staff meeting.  However Plaintiff has cited no record evidence to support her position.  Therefore, the Court deems them admitted for purposes of summary judgment.

[14] The parties disagree over the timing of the meeting.  Plaintiff testified that she was not certain about the date.  Handy-Clay Dep. 132:1–8.  Morris testified that the meeting was to address what he deemed to be the unprofessional tenor of the emails Plaintiff had sent Porter on November 20, 2009.  Morris Dep. 21:22–23:8.  However, the Court finds that the timing of the meeting is not material to the issues presented at summary judgment.

responded during the meeting, "Well, I can understand there may be some things going on with you all, but I just got here and until I become acclimated let's just leave things the way they are." (Indiv. Defs.' Statement of Undisputed Fact ¶ 15.)  Plaintiff also remembers Morris mentioning "chain of command." (*Id.*)  Plaintiff adds that she discussed changes in the organizational chart and her belief that the chart was "manipulated."  (Pl.'s Resp. to Indiv. Defs. Statement ¶ 15.)  Morris directed Plaintiff to report to another city employee about records requests.  (*Id.*)

Seven or eight times between January 2010 and August 2010, Plaintiff would ask Morris about the issues they discussed in late 2009, specifically inquiring about Morris setting out his own "policies and procedures" for the City Attorney's Office and the issue of "employees leaving in and out of the office" in an apparent "abuse of time."  (Indiv. Defs.' Statement of Undisputed Fact. ¶ 18.)[15]  Some time in June or July 2010,  Plaintiff approached Councilman Myron Lowry.  (Handy-Clay Dep. 158:16–19.)[16]  According to Plaintiff, she complained to Councilman Lowry about "the policies and procedures, how people are basically coming and going in the office" and how she "was being harassed by Ms. Porter about my time and she's basically doing the same thing."  (*Id.* 160:9–18.)  Plaintiff questioned Councilman Lowry  "why am I being harassed about time and I'm an employee, an exempt employee . . . but I am going through the fire."  (*Id.* at 160:23–161:1.)

_____

[15] Plaintiff admits this fact and adds that she also complained to Morris in early August 2010 about Porter cancelling Plaintiff's furniture order and engaging in other forms of retaliation.  Pl.'s Resp. to Defs.' Statement ¶ 18.  However, the Court finds that this conduct is not relevant to Plaintiff's First Amendment retaliation claim because the dispute over office furniture did not constitute protected speech or an adverse action.

[16] Councilman Lowery has averred that he has no recollection of this meeting and emphatically denied that he ever told Plaintiff to "adapt to the culture of city hall and keep a low profile."  Lowry Aff. ¶¶ 4–5.  Viewing the evidence in the light most favorable to Plaintiff, the Court assumes at summary judgment that the meeting between Plaintiff and Lower did occur.

In early August 2010, Morris and Plaintiff had a discussion in which Plaintiff asked Morris about establishing timekeeping procedures and Porter's requests for Plaintiff to submit her time to her. (Indiv. Defs.' Statement of Undisputed Fact. ¶ 20.)  Morris responded that Plaintiff should "just hold on" and that he would "get it taken care of." (*Id.*)  Plaintiff admitted that she never mentioned to Morris her observations that Morris was frequently absent from the office between June 2010 and August 2010. (*Id.* ¶ 19.)

### C. Plaintiff's Final Confrontation With Porter

It is undisputed that in addition to receiving records requests, Plaintiff also served as a relief person at the law division's front desk. (*Id.* ¶ 3.)  Porter assigned Plaintiff and other non-lawyer personnel in the law division's support staff to cover the front desk. (*Id.* ¶ 4.)  Plaintiff covered the front desk on a rotation schedule and at other times when Porter instructed her to do so. (*Id.* ¶¶ 3, 4.)  Plaintiff adds that Porter, and not the City Attorney himself, assigned her work at the front desk.[17]  When working at the front desk, Plaintiff was expected to answer the phone, deliver the attendance log sheet to Porter, greet visitors and do her other "public records work." (*Id.* ¶ 4.)  Porter had the authority to instruct Plaintiff to cover the front desk. (*Id.* ¶ 5.)[18]

---

[17] Plaintiff has marked the facts concerning her assignments to work at the front desk as disputed.  However, Plaintiff does not actually dispute that she performed the work or that Porter assigned it to her.  Plaintiff merely adds that Porter, and not Elbert Jefferson or Herman Morris, assigned her the task.  Pl.'s Resp. to Indiv. Defs.' Statement ¶ 3. The Court finds that this additional fact does not dispute the facts asserted by Defendants.  Thus, the Court finds that the Defendants' statements are undisputed for purposes of summary judgment.

[18] Plaintiff responds to this fact as follows: "Admitted, on a schedule rotation."  It is not clear whether Plaintiff is asserting that Porter had authority to set the schedule for a rotation of personnel covering the front desk but not to assign them as needed.  In any event, Plaintiff has cited no evidence to support such a contention.  Therefore, the Court deems Defendants' statement to be undisputed for purposes of summary judgment.

On August 24, 2010, at 5:18 p.m., Porter announced by email a support staff meeting for the following day from 10:30 a.m. to 11:30 a.m. (*Id.* ¶ 21.) According to Porter's email, the purpose of the meeting was to discuss file set up and payment of invoices from attorneys. (*Id.*) In her email Porter directed Plaintiff to cover the front desk during the meeting. (*Id.*) Porter designated Plaintiff to cover the front desk during the meeting because the meeting did not address Plaintiff's work. (*Id.*) Plaintiff did not see the email until she arrived for work on the following day, August 25, 2010. (*Id.*)

Plaintiff initially responded to Porter's email instructing her to cover the front desk on August 25, at 9:25 a.m., stating "I'm going to see if I can reschedule my lunch appointment. If not, other arrangements will have to be made for covering of the front desk." (*Id.* ¶ 22.) Plaintiff adds that her father was ill at the time, that she and her brother were taking turns checking on him, and that she hoped Porter would have compassion on her under the circumstances. (Pl.'s Resp. to Defs.' Statement ¶¶ 21, 22.)[19] At 9:42 a.m., Plaintiff emailed Porter again and explained that she needed 20 minutes to travel to her appointment. (Indiv. Def.s Statement of Undisputed Fact ¶ 24.) At 10:27 a.m. Porter responded to Plaintiff's email and stated that the meeting superseded Plaintiff's lunch engagement and that Porter expected Plaintiff to be at the front desk from 10:30 until the meeting concluded in an hour or less. (*Id.* ¶ 25.) At 10:30 a.m., Plaintiff emailed Porter and responded that Porter had given short notice and that Plaintiff intended to leave for her appointment at 11:10 a.m. (*Id.* ¶ 26.) Plaintiff adds in response to Defendants' undisputed contentions that she did not refuse to cover the front desk and that Porter claimed to have attempted to find a replacement. (Pl.'s Resp.

---

[19] Plaintiff explains elsewhere in the record that she had planned to take her father to lunch and discuss personal business with him. Handy-Clay Dep. 196:2–23.

to Defs.' Statement ¶ 26.)  Plaintiff argues that Porter was simply retaliating against her for her protected activity.  (*Id.*)[20]  Plaintiff did, in fact, work the front desk as requested and was later relieved by Wanda Johnson so that Morris could discuss the situation with Plaintiff.  (*Id.*)

Around 11:00 a.m., Plaintiff called the City's EEO office and spoke to Antonio Adams about filing a complaint for "retaliation" and "office policy and protocols." (Handy-Clay Dep. 169:19–24; 171:2–6.)  According to Plaintiff, Adams advised Plaintiff to approach Morris because "there [had] been some discussions with Morris concerning the leave in the attorney's office and how to get things regulated." (*Id.* at 169:21–22.)  At 11:25 a.m., Plaintiff emailed Morris and indicated that "something must be done about this disrespect I'm getting" and asked Morris for help and offered to assist in developing office procedures.  (Indiv. Defs.' Statement of Undisputed Fact ¶ 27.)  The parties disagree over whether Plaintiff included in her email to Morris the chain of emails she had exchanged with Porter about her lunch appointment and covering the front desk during the August 25, 2010 support staff meeting.  (Pl.'s Resp. to Defs.' Statement ¶ 27.)  Plaintiff also raised some question about the date and time of the email.  (*Id.*)

When Morris subsequently walked by the front desk, Plaintiff raised the issue with him. (Indiv. Defs.' Statement of Undisputed Fact ¶ 27.)  Morris instructed her to get someone to cover the desk and then come to Morris's office to discuss the situation further.  (*Id.*)  According to Plaintiff, she complained to Morris that she was suffering retaliation on account of her complaints

_____

[20] Plaintiff alleges that Porter took the following actions against her in retaliation for her complaints: turning the lights off on her; cancelling Plaintiff's meeting with former city attorney Elbert Jefferson; confiscating Plaintiff's keys to the back door of the office; and copying other employees on Porter's responses to Plaintiff's emails.  For reasons discussed more fully below, the Court holds that none of these activities constitute an adverse employment action and therefore none are relevant to the Court's analysis of Plaintiff's First Amendment retaliation claim.

about Porter, Porter directing Plaintiff to submit her time, and "all the other employees in the office are actually coming and going as they please." (*Id.*) During her deposition, Plaintiff testified that she complained specifically about Porter "pressing me about my time and all the other employees in the office are actually coming and going as they please, and that's what I was reporting, still barking the same thing about bringing to light the fact that employees in the office was a little bit - - people were just coming and going and things was[sic] not equal." (*Id.* 172:13–22.) According to Plaintiff, Morris commented that Porter could have handled the situation better and told Plaintiff that he would address the matter. (Indiv. Defs.' Statement of Undisputed Fact ¶ 27.) Morris actually responded to Plaintiff's August 25 email on the August 26, 2010, and stated that he would take up the issues in the "not too distant future." (*Id.*)

**D. Plaintiff's Public Records Request and Termination**

Plaintiff's first request for public records was sent to Jill Madajczyk, the assistant City Attorney charged with reviewing records requests, by email at 11:05 a.m. on August 26, 2010. (Indiv. Defs.' Statement of Undisputed Fact ¶ 28 .)[21] Morris, Porter, and other officials at City Hall were copied on Plaintiff's email to Madajczyk. (Stipulated Ex. to Defs.' Statement of Undisputed Facts, D.E. # 122-6) Plaintiff requested the following records under "the Tennessee state open records act":

(1) leave forms, all vacation, sick and bonus time for all City Attorney's Office employees

---

[21] For purposes of this motion, Defendants stipulate that the emails containing the public records requests submitted by Plaintiff are accurately depicted in the emails attached to Defendants' summary judgment briefing. Indiv. Defs.' Statement of Undisputed Fact ¶ 28. Plaintiff adds that Mayor Wharton admitted that Plaintiff made the requests in her capacity as a private citizen and that her job duties did not include reporting corruption. Pl.'s Resp. to Defs.' Statement ¶ 28.

from June 1, 2009, to the time of the request;

(2) copies of all signed approval forms for City Attorney's Office employees exempt from reporting to work later than 8:30 a.m.;

(3) copies of time sheets for all City Attorney's Office employees from January 1, 2008 to the time of the request;

(4) a list of all City Attorney's Office employees who are required to report their arrival time and departure time by email, and a copy of the policy for reporting time;

(5) copies of all City Attorney's Office employees' internal personnel files;

(6) copies of the City Attorney's Office front desk sign-in and -out sheets from June 1, 2009, to the time of the request; and

(7) copies of all check requests submitted for payment for any City Attorney's Office employee hired from January 1, 2008, to the time of the request.

(*Id.*)  At 11:30 a.m., Plaintiff sent a second request to Madajczyk to inspect records for all City Attorney's Office employees who had been docked pay due to time away from work from June 1, 2009, to the time of the request.  (*Id.*)  At 2:43 p.m., Madajczyk responded to Plaintiff's emails, asking whether Plaintiff was requesting records only for employees working in the City Attorney department or records for all employees of the City Attorney Division, no matter which department the employee worked in.  (*Id.*)

The parties dispute the scope and sequence of the remaining events leading up to Plaintiff's termination.  According to Defendants, Morris had an 11:00 a.m. meeting with Mayor Wharton on August 26, 2010, concerning another matter.  (Morris Dep. 108:16–109:7.)  It was at the conclusion of the meeting when Morris first mentioned to Mayor Wharton that he might have to terminate an

15

employee, though Morris did not refer to Plaintiff by name.  (*Id.*)  At 1:20 p.m., Morris sent an email

to Madajcyzk directing her to treat Plaintiff's records requests like any other request submitted by

the public.  (*Id.* at 98:6–11.)  After meeting with the Mayor on the morning of August 26, 2010,

Morris continued to evaluate the situation.  (Indiv. Defs.' Statement of Undisputed Fact ¶ 30.)

Morris had a second conversation with Mayor Wharton in which he informed him about Plaintiff's

open records request and that staff were treating it as a normal request.  (Morris Dep. 113:16–25.)

On the evening of August 26, 2010, Morris spoke by telephone with senior assistant city

attorney Gerald Thornton.  (Indiv. Defs.' Statement of Undisputed Fact ¶ 30.)[22]  Thornton informed

Morris that there had been friction between Porter and Plaintiff prior to Morris' appointment as city

attorney.  (*Id.*)[23]  Based on Plaintiff's refusal to be supervised by Porter, the multiple encounters

between Plaintiff and Porter, and Morris's awareness that the situation had existed for some time

predating his tenure as City Attorney, Morris determined that Plaintiff's unwillingness to accept

supervision rose to the level of insubordination and that Morris would ask the Mayor to dismiss

Plaintiff.  (*Id.* ¶ 31.)[24]  Morris drafted Plaintiff's termination letter and sent it to Mayor Wharton for

_____

[22] According to Plaintiff, Thornton testified Morris called him between 3 and 4 p.m. on August 26, 2010, and inquired about the procedure for terminating an employee.  Pl.'s Resp. to Statement of Undisputed Fact ¶ 30.  Thornton further testified that Morris may have mentioned Plaintiff's open records request and her complaint to the City EEO office.  *Id.*  However, Plaintiff has not made this portion of Thornton's deposition testimony part of the record, so the Court declines to consider it here.  What is more, it is not clear to the Court that the evidence would create a material disputed about the timing of Morris's decision-making process.

[23] Plaintiff disputes this statement but then goes on to state that she has "no personal knowledge whether this conversation took place."  Pl.'s Resp. to Defs.' Statement ¶ 30.

[24] Plaintiff adds that Morris had a conversation with Chief Administrative Officer George Little on August 26, 2010, about the open records request.  Pl.'s Resp. to Defs.' Statement ¶ 31.  According to Little, he told Morris that Plaintiff's termination would be appropriate only if it had no connection to her records request.  (*Id.*)  However, Plaintiff has not made this portion of Little's deposition testimony part of the record, so the Court declines to consider it here.

his approval on August 26, 2013, at 11:15 p.m.  (Morris Dep., ex. 35, D.E. #132-2, Page ID 1529.)

Morris's email read as follows:

> Bridgette Handy-Clay, the Public Records Coordinator[,] has escalated a personal dispute with her supervision over being required to report to and sign and [sic] out for work on time to a request for Public Records of the personnel files on all 68 of the Law Division staff.  I have instructed staff to respond to her request as we would any citizen.
>
> Several months ago after a disruptive episode I met with her and the Senior Legal Administrator and advised her that she had to report to work on time and accept supervision and instruction from the Senior Legal Administrator.
>
> I feel she has become a disruptive element in the Law Division.  For that reason I am requesting her 'disappointment' as a 'Will and Pleasuer [sic]' member of my staff.

(*Id.*).  Mayor Wharton responded to Morris's email at 5:56 a.m. on August 27, 2010, by simply stating "Approved."  (*Id.*)

On August 27, 2010, Plaintiff went to the City's human resources office and spoke to Quintin Robinson.  (Handy-Clay Dep. 298:15–19.)  According to Robinson, Plaintiff referred to being treated differently than other employees in the City Attorney's Office, complained about not being allowed to use the back door, and requested Herman Morris's leave records.  (Robinson Dep. 22:16–23:6 Apr. 22, 2013.)  Robinson specifically denied that Plaintiff ever made a complaint about abuse of leave generally.  (*Id.* at 28:7–14.)  Later, around noon, Plaintiff emailed another records request for payroll records for all City Attorney's Office employees from January 1, 2008 to the time of the request.  (Stipulated Ex. to Defs.' Statement of Undisputed Facts, D.E. # 122-6.)  Shortly after that time on August 27, 2010, Morris hand delivered the signed termination letter to Plaintiff at her desk. (Morris Dep. 121:21–25.)

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment

17

if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[25]   The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."[26]   In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[27] and the "judge may not make credibility determinations or weigh the evidence."[28] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[29]   It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[30]   These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[31]   In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[32]

---

[25] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

[27] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[28] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[29] *Celotex*, 477 U.S. at 324.

[30] *Matsushita*, 475 U.S. at 586.

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[32] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[33]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[34]

## ANALYSIS

Defendant City of Memphis seeks summary judgment on Plaintiff's claim against it for municipal liability and for the acts of city officials taken in their official capacities, and Defendants Morris and Porter seek qualified immunity as to Plaintiff's claims against them in their individual capacities.  Based on the parties' briefs, statements at the motion hearing, and separately proposed pretrial orders, the Court finds that a great deal of disagreement exists about the precise issues presented in this case.  The Court's purpose at summary judgment then is to eliminate issues where judgment as a matter of law is warranted and clarify as much as possible what genuine issues remain for trial.

To begin with, only a single free speech claim remains in this case.  In a previous appeal in this matter, the Sixth Circuit construed Plaintiff's pleadings to allege First Amendment violations based on "four categories of speech:" "allegations about obstacles to the completion of her record-production duties; generalized allegations of disparate treatment and 'workplace abuse' within the City Attorney's office; allegations related to violations of city policies related to absences, leave,

---

[33] *Anderson*, 477 U.S. at 251–52.

[34] *Celotex*, 477 U.S. at 322.

and pay; and allegations of 'retaliation' without further definition."[35]   The Court of Appeals affirmed the dismissal at the pleadings stage of the following First Amendment claims: "retaliation," "workplace abuse," a "lack of policies and procedures," and resistance from city departments about producing records for the public.[36]   The only claim remanded by the Sixth Circuit was Plaintiff's First Amendment claim based on her protected complaints about "violations of city policies related to absences, leave, and pay."[37]   Because this case is on remand, this Court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court" including the Court of Appeals' construction of the pleadings.[38]

At the motion hearing, Plaintiff asserted that she continued to have free speech claims based on her complaints of nepotism in the City Attorney's Office, misrepresentations about the professional qualifications of paralegals in the office, and possible manipulation of the office organizational chart.   The Sixth Circuit did not directly address these additional claims in its decision.   Even if Plaintiff continued to have claims based on these kinds of complaints, Plaintiff has not adduced any evidence to establish that she ever made specific complaints related to nepotism or paralegals.[39]   The Court further holds that any complaint about the manipulation of the office

---

[35] *Handy-Clay v. City of Memphis*, 695 F.3d 531, 541 (6th Cir. 2012).

[36] *Id.* at 541–42.   The Sixth Circuit also affirmed the dismissal of Plaintiff's § 1983 due process claims under the Fourteenth Amendment.   *Id.* at 546–48.

[37] *Id.* at 541.

[38] *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012) (citing *Hanover Ins. Co. v. Am. Eng'g Co.,* 105 F.3d 306, 312 (6th Cir. 1997)).

[39] In her summary judgment brief, Plaintiff states that "her complaints . . . are fully corroborated in that (1) the City has admitted there are no certified paralegals in the office; [and] (2) there is ample evidence of nepotism in the office . . . ."   Pl.'s Resp. in Opp'n 5 (D.E. # 136). The issue presented is not whether such problems actually existed but whether Plaintiff engaged

20

organizational chart simply does not address a matter of public concern.  Therefore, the Court concludes that Plaintiff's claim based on the violation of city policies for absence, leave, and pay is the only remaining claim in this case.  The Court declines to consider any evidence or testimony relevant to other claims which the Sixth Circuit previously dismissed.  Having clarified the only claim remaining, the Court now turns to analyze the merits of Defendants' Motions for Summary Judgment.

## I. Claims Against the City of Memphis

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[40]  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."[41] "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."[42] Under § 1983, "a local government may not be sued . . . for an injury inflicted solely by its employees or agents."[43]  Generally, municipal liability for the violation of a constitutional rights is proper "when execution of a government's policy or

---

in protected speech addressed to the problems.  Plaintiff's claims about nepotism and paralegal certifications fail on this point.

[40] 42 U.S.C. § 1983.

[41] *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[42] *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[43] *Arnold v. City of Columbus*, 515 F. App'x 524, 538 (6th Cir. 2013) (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

custom inflicts the injury."[44]   A municipality can be held liable for a "single decision" by a policymaker if "the official is the one who has 'the final authority to establish municipal policy with respect to the action ordered.'"[45] A municipality can also be liable for a decision made by a subordinate if the decision was ratified by a final policymaker.[46]

To make out her § 1983 claim for retaliation under the First Amendment, Plaintiff has the burden to show (1) that she engaged in protected speech; (2) that she suffered an adverse action; and (3) that there was a causal connection between her speech and her adverse action.[47]  If Plaintiff establishes a prima facie case, the burden then shifts to Defendants to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct.[48]  Notably, the Court's analysis for a First Amendment retaliation claim differs from the *McDonnell Douglas* burden-shifting framework in that the burden does not shift back to Plaintiff to show pretext.[49]  For the reasons that follow, the Court holds that genuine issues remain about whether Plaintiff's protected speech was the "but for" cause of her termination.

**A. Protected Speech**

First, Plaintiff must show that she engaged in protected speech.  As a threshold issue, the Court notes that Plaintiff has cited a number of instances where she made complaints to Morris as

---

[44] *Id.*

[45] *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1985)).

[46] *Id.*  Defendant City of Memphis has not raised the issue of municipal liability at summary judgment.  Therefore, the Court declines to consider it further.

[47] *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012).

[48] *Id.* (quotation marks omitted).

[49] *Id.*

well as other city officials about problems she perceived in the City Attorney's Office.  Rather than deciding whether all of these complaints rise to the level of protected speech, the Court begins by considering Morris's argument that he had no knowledge of Plaintiff's speech addressed to other city officials, and therefore such speech could not have been a motivating factor in Plaintiff's termination.  Although this argument actually goes to the causation element and raises what is typically a question of fact, the Court finds that no genuine issue of material facts exists on the point. Therefore, summary judgment is proper as to a number of Plaintiff's complaints.  Resolving the issue at the outset will allow the Court to eliminate a number of complaints lodged by Plaintiff and then decide whether the remaining complaints constitute protected activity under the First Amendment.

### 1. Complaints to Other City Officials

Morris essentially argues that Plaintiff cannot prove a causal connection between her protected speech, which Morris never knew about, and Morris's decision to terminate her employment. Plaintiff counters that the law imputes knowledge of her protected conduct to the City. Neither party has cited any legal authority to support their respective positions.  As a general rule in retaliation cases, "the decisionmaker's knowledge of the protected activity is an essential element of the prima facie case of unlawful retaliation."[50]  The Sixth Circuit has held that a defendant is entitled to summary judgment on a § 1983 retaliation claim where there is evidence of temporal proximity but no evidence the decisionmaker had knowledge of the protected activity.[51]

---

[50] *Proffitt v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 150 F. App'x 439, 442 (6th Cir. 2005).

[51] *Williams v. Zurz*, 503 F. App'x 367, 373 (6th Cir. 2012) ("[T]here is no evidence that Zurz had knowledge of any of the criticisms Williams allegedly voiced against her employer

23

Viewing the evidence in the light most favorable to Plaintiff, there is no proof from which a reasonable juror could find that Morris knew about Plaintiff's complaints to other city officials. Plaintiff made a number of complaints to various city officials besides Morris, both during Morris's tenure and before Morris ever became City Attorney.  For instance, Plaintiff testified to her complaints addressing Elbert Jefferson, Demar Roberts, and Veronica Coleman-Davis, all before Morris ever became City Attorney.  After Morris took over as City Attorney in October 2009, Plaintiff made complaints to Councilman Lowry, Julian Mabry in the payroll department, and Antonio Adams in the city EEO office.[52]  Even assuming that Plaintiff engaged in protected activity when she made complaints to these other officials, Morris denies that he knew about them.  "Where a decisionmaker denies having knowledge of the alleged protected activity, a plaintiff must do more than offer only conspiratorial theories or flights of fancy, speculations, hunches, intuitions, or rumors."[53]  Plaintiff has admitted she does not know whether Morris was aware of any of her other

---

during her meeting with Haseley."); *Heard v. Caruso*, 351 F. App'x 1, 11 (6th Cir. 2009) (holding that prison official was entitled to summary judgment where prisoner could not prove official knew of protected speech).

[52] Plaintiff has also testified that she complained to Quintin Robinson in human resources on August 27, 2010.  Handy-Clay Dep. 298:15–19.  Robinson testified that Plaintiff referred to being treated differently than other employees in the City Attorney's Office, complained about not being allowed to use the back door, and requested Herman Morris's leave records. Robinson Dep. 22:16–23:6 Apr. 22, 2013. Robinson specifically denied that Plaintiff ever made a complaint about abuse of leave generally.  *Id.* at 28:7–14.  Robinson testified that he never discussed these complaints with Morris or Mayor Wharton.  *Id.* at 26:11–23.  Moreover, the undisputed evidence shows that Morris had already received approval to dismiss Plaintiff at the time she went to human resources.  Therefore, this activity cannot be the "but for" cause of Plaintiff's termination as a matter of law.

[53] *Proffitt*, 150 F. App'x at 443 (quotation, brackets, ellipsis, and internal quotation marks omitted).

"free speech activities."[54]  For this reason, any claim based on these speech acts simply fails on the causation element.  There is no evidence from which a reasonable juror could find that Plaintiff's complaints to parties other than Morris was the "but for" cause of Morris's decision to terminate her.  As such, the Court need not decide whether any of these complaints constituted protected activity.

### 2. Complaints to Morris Directly

The next issue presented is whether Plaintiff's complaints of which Morris was aware constituted protected speech for purposes of the First Amendment.  Again, taking the evidence in the light most favorable to Plaintiff, Morris was aware of the following complaints from Plaintiff: (1) Plaintiff's October 22, 2009 email to Morris; (2) Plaintiff's verbal complaints during her meeting with Morris and Porter in October or November 2009; (3) Plaintiff's seven or eight verbal complaints to Morris between January 2010 and August 2010; (4) Plaintiff's verbal complaint to Morris in early August 2010; and (5) Plaintiff's verbal complaints during her meeting with Morris on August 25, 2010.

Whether a public employee's speech is protected in a First Amendment retaliation case is a question of law.[55]  In order to establish that her speech was protected, Plaintiff must first show that the speech touched on a matter of public concern.[56]  Next Plaintiff must show that under the *Pickering* balancing test, her "free speech interests outweigh the efficiency interests of the government as employer."[57]  Finally, Plaintiff must show that the speech was not made pursuant to

---

[54] Handy-Clay Dep. 270:14–271:17.

[55] *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012).

[56] *Id.*; *Connick v. Myers,* 461 U.S. 138, 142 (1983)

[57] *Dixon*, 702 F.3d at 274; *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968).

her official duties as public records coordinator or a staff member of the City Attorney's Office.[58] In short, Plaintiff "must satisfy *each* of these requirements: the *Connick* 'matter of public concern' requirement, the *Pickering* 'balancing' requirement and the *Garcetti* 'pursuant to' requirement."[59]

Applying these standards to record evidence, the Court holds that Plaintiff can show that she engaged in protected activity when she complained about the violation of city policies on pay, leave, and vacation in the City Attorney's Office. Specifically, Plaintiff's October 22, 2009 email was addressed to Morris and raised the issue of "misuse of city time" and explained that "[s]ome employees are allowed to run personal errands without applying their vacation- bonus or sick time." For the reasons previously discussed by the Court of Appeals in its opinion in this case, the Court holds that Plaintiff's reference to "misuse of city time" in her October 22, 2009 email addressed a matter of public concern.[60] Defendant has proffered no reason why Plaintiff's free speech interest in the October 22, 2009 email did not outweigh the City of Memphis's interest in efficiency, satisfying the *Pickering* balancing test for purposes of summary judgment. Finally, although the rest of the issues raised in the email apparently related to personnel issues within the City Attorney's Office, there is no evidence that the complaint about the misuse of city time related to Plaintiff's job duties as public records coordinator or otherwise runs afoul of *Garcetti*'s "pursuant to" requirement. Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court holds that

---

[58] *Dixon*, 702 F.3d at 274; *Garcetti v. Ceballos,* 547 U.S. 410 (2006).

[59] *Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.,* 624 F.3d 332, 338 (6th Cir. 2010).

[60] *Handy-Clay*, 695 F.3d at 543–44. Although the Court has never previously reached the issue of whether Plaintiff's speech addressed at a matter of public concern, the Sixth Circuit's reasoning on this point clearly establishes that Plaintiff's email touched on a matter of public concern.

26

Plaintiff's complaint about "misuse of city time" in the October 22, 2009 email constitutes protected activity.[61]

As for Plaintiff's other direct complaints to Morris, much of Plaintiff's speech fails under the public concern test because Plaintiff was complaining about Porter's management style, Porter's workplace conduct (including not reporting her own time away from the office), the office procedures for daily reporting time to Porter, and Porter taking away Plaintiff's key to the back door and denying her color copies. None of these matters may "be fairly considered as relating to any matter of political, social, or other concern to the community"[62] or amount to topics "of legitimate news interest."[63] Therefore, the Court holds that Plaintiff's complaints on these kinds of issues is not protected speech and cannot form the basis for her First Amendment claim.

### 3. Plaintiff's August 26, 2010 Open Records Request

The next issue is whether Plaintiff's open records requests submitted on August 26, 2013, constitute protected speech as part of her First Amendment claim. Defendants argues that Plaintiff's requests are not constitutionally protected because there is no constitutional right to obtain public records. At the motion hearing, Plaintiff seemed to vacillate on the issue, at one point conceding that the records requests were not protected but later asserting that they were. The Court holds that Plaintiff's act of filing the records request constituted a protected speech activity for purposes of her

---

[61] With respect to Plaintiff's seven or eight verbal complaints to Morris about "abuse of time," the Court holds that factual questions remain for the jury about what Plaintiff actually stated to Morris. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008) ("Whether the speech at issue involves a matter of public concern is a question of law for the court, although there may be some factual questions for a jury if it is disputed whether the expression occurred or what words were specifically stated.") (quotation omitted).

[62] *Connick,* 461 U.S. at 146.

[63] *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83–84 (2004).

First Amendment retaliation claim.

First and foremost, while the Sixth Circuit did not directly address the issue on appeal, the opinion certainly implies that Plaintiff's records requests were protected.  In holding that Plaintiff spoke in her capacity as a citizen, the Court of Appeals stated, "The day before she was terminated, Handy-Clay submitted open-records requests asking for 'documents regarding vacation, sick and bonus time, time sheets, docked pay, personnel files, and payroll check requests for City Attorney's office employees."[64]  With respect to causation, the Sixth Circuit found that Plaintiff's claim was "supported by the close temporal proximity between [her] email's informing her superiors of about her requests for various records and her termination."[65]  The Sixth Circuit's opinion also concluded that Defendants had knowledge of Plaintiff's protected speech, in part because she copied them on her email requests for records.[66]  At the very least, these statements from the Sixth Circuit's opinion strongly suggest that Plaintiff's records requests constituted protected activity.

Additionally, the Court finds Defendants' argument on this issue unpersuasive.  Defendants contend that Plaintiff's requests were not protected because she had no constitutional right to obtain public records.  Defendants rely on the recent decision of the United States Supreme Court in *McBurney v. Young*, 133 S. Ct. 1709 (2013).  However, the precise issue presented in McBurney was whether the Virginia Freedom of Information Act, Va.Code Ann. § 2.2–3700 *et seq.,* violated either the Privileges and Immunities Clause of Article IV of the Constitution or the dormant

---

[64] *Handy-Clay*, 695 F.3d at 542.

[65] *Id.* at 545; *see also id.* at 546 ("Similarly, we note that the chronology of events supports an inference of causation, particularly because Handy-Clay was terminated the day after she made her own records requests.").

[66] *Id.* at 546.

Commerce Clause.[67]  In holding that the Virginia law did not violate these constitutional provisions,

the Supreme Court noted its own precedent "that there is no constitutional right to obtain all the

information provided by FOIA laws."[68]  However, the Supreme Court did not address the issue

presented in this case, which is whether the First Amendment protects the right to *request* public

records.  Defendants' argument misses this critical distinction.  In fact, a number of courts have held

that the act of requesting public records is a speech act protected by the First Amendment.[69]

Therefore, the Court rejects Defendants' position on the matter.[70]

**(a) Matter of Public Concern**

To determine whether Plaintiff's emails were actually protected, the Court must conduct the

same analysis it previously applied to Plaintiff's October 22, 2009 email.  The Court's first inquiry

---

[67] *McBurney v. Young*, 133 S. Ct. 1709, 1713 (2013).

[68] *Id.* at 1718 (citations omitted).

[69] *See McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 39–40 (S.D.N.Y. 2011) ("Here, McAvey's FOIL request to the Goshen police department constituted citizen speech" and "McAvey engaged in the speech at issue here (the FOIL request) in her role as a citizen, as opposed to her role as a public employee, and that speech is protected against retaliation by the First Amendment."); *Kerr v. City & Cnty. of San Francisco*, C 10-5733 CW, 2012 WL 3877752 (N.D. Cal. Sept. 6, 2012) ("As to whether the requests were expressive speech, under the circumstances presented here, a reasonable factfinder could infer Dr. Rivero and Plaintiff intended to convey a message that they suspected that the Gift Fund was being managed and used improperly."); *Benkoski v. Wasilewski*, CIV.A. 3:07-CV-0197, 2008 WL 4414741 (M.D. Pa. Sept. 24, 2008) *aff'd,* 584 F.3d 1102 (3d Cir. 2009) ("None of the Defendants dispute that the Plaintiffs' actions are the type typically afforded protection under the First Amendment and the Court agrees that Plaintiffs' attempt to obtain public records as part of their investigation constituted protected activity."); *Moore v. Gabriel*, 3:05CV31 CDL, 2007 WL 917291 (M.D. Ga. Mar. 22, 2007) ("The Court has found that the Frazier memorandum and Plaintiff's Open Records Act requests satisfy the requirements for protected speech. The speech clearly relates to the potential abuse and mismanagement of ABHS resources by agency officials.").

[70] *See also* Order Denying Def. Porter's Mot. to Dismiss June 14, 2013 (D.E. # 121) (rejecting Defendant Porter's theory that Plaintiff had not suffered a constitutional deprivation because she had no clearly established constitutional right to obtain public records).

is whether the August 26, 2010 records requests raised a matter of public concern. The public concern test focuses on "the content, form, and context of a given statement, as revealed by the whole record."[71] The Court looks to "the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker."[72] The Court does not focus on "what might be 'incidentally conveyed' by the speech," meaning that "passing or fleeting references to an arguably public matter do not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest."[73]

The Court holds that Plaintiff's August 26, 2010 records requests raised matters of public concern, though only in part. Some of the information Plaintiff sought addressed matters of public concern, specifically, leave forms, time sheets, and sign-in sheets for City Attorney's Office employees. The record shows that Plaintiff had previously raised the issue of employees violating city policies related to pay and leave, an issue which touched a matter of public concern. Viewing the evidence in the light most favorable to Plaintiff, the communicative purpose of Plaintiff's requests for employee attendance and leave records was her stated concern about employees in the City Attorney's Office violating city policy. Plaintiff testified in her deposition as follows: "I was just being tired of things happening, things wasn't [sic] getting taken care of. I was reporting to Morris and there wasn't nothing[sic] getting done and that's the reason why I had the request. I just felt that I needed to get these documents, take it up to the HR department and request an

---

[71] *Connick,* 461 U.S. at 147–48.

[72] *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 249 (6th Cir. 2007) (quoting *Farhat v. Jopke*, 370 F.3d 580, 592 (6th Cir. 2004))

[73] *Farhat*, 370 F.3d at 592–93.

investigation, which I never did get an opportunity to do."[74]   Though somewhat ambiguous, a jury could infer that Plaintiff's purpose in making her records request was to expose the alleged abuses in the City Attorney's Office.  For this reason, these portions of her August 26, 2010 records requests constituted protected speech.

The Court would add that other information Plaintiff sought did not raise matters of public concern.  Taken in context, Plaintiff's request for documentation requiring some employees to report their time by email and allowing some employees to report to work later than 8:30 a.m. related to Plaintiff's complaints that she and other support staff had to report their time by email to Porter and were admonished for arriving later than 8:30 a.m.  The focus of this speech then was a personnel dispute in the City Attorney's Office involving Plaintiff and Porter.  This aspect of Plaintiff's records request advanced only her private interests.  Even so, the Court concludes that the portion of the emails requesting records about leave forms, time sheets, and sign-in sheets touched a matter of public concern, thus satisfying *Connick*'s matter of public concern test.

**(b) Pickering Balancing**

At the second step of the inquiry, the Court must decide whether reasonable officials could have disagreed about whether Plaintiff's free speech interests outweighed the City of Memphis's interests in efficiency.  The second inquiry requires the Court to engage in *Pickering* balancing by weighing Plaintiff's free speech rights against the City's interest in the efficient administration of the City Attorney's Office.  The Court considers "whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer,

---

[74] Handy-Clay Dep. 297:15–21.

create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees."[75]  Relevant factors would also include "the manner, time, and place of the employee's expression," as well as "the context in which the dispute arose."[76]  As part of the balancing test, a defendant has the burden to show legitimate grounds for the termination.[77]  The City's motivation is a question of fact.[78]  "Although a government employer may take steps to ensure workplace harmony and need not allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action, a *stronger* showing from the employer may be necessary if the employee's speech substantially involved matters of public concern."[79]  In other words, "the stronger the showing that the speech was on a matter of public concern, the greater the burden on the employer to show that its interests should prevail."[80]

The Court holds that Plaintiff has carried her burden to adduce evidence from which a reasonable jury could find that her speech interests outweighed the City's interest in efficient public services, though a jury will need to decide certain fact issues before the Court can actually conduct

---

[75] *Rodgers v. Banks*, 344 F.3d 587, 601 (6th Cir. 2003).

[76] *Id.* (citation omitted).

[77] *Id.* (citation omitted).

[78] *Meyers v. City of Cincinnati*, 934 F.2d 726, 729 (6th Cir. 1991).

[79] *Whitney v. City of Milan*, 677 F.3d 292, 298 (6th Cir. 2012) (citing *Connick,* 461 U.S. at 152); *see also Leary v. Daeschner,* 228 F.3d 729, 737–38 (6th Cir.2000) ("[I]f an employee's speech substantially involved matters of public concern, an employer may be required to make a particularly strong showing that the employee's speech interfered with workplace functioning before taking action.").

[80] *Cherry v. Pickell*, 188 F. App'x 465, 469–70 (6th Cir. 2006).

the *Pickering* balancing.  As the Sixth Circuit explained in its opinion in this case, "public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law, when exposing graft and corruption, and when seeing that public funds are not purloined or wasted."[81]  The Court has held that portions of Plaintiff's August 26, 2010 emails constitute protected speech as they related to her complaints about abuse of city pay and leave policy.  At the same time, Plaintiff raised her concerns about violations of city policy in a particular context. Plaintiff had complained for some time about Cathy Porter's management style and questioned why she was required to report her time to Porter while other employees did not, matters which did implicate a public concern.  And Plaintiff's records requests came on the heels of her complaint to Morris about Porter directing her to cancel a lunch appointment and cover the front desk, another personnel dispute that did not amount to a public concern.  In sum, it will be for the jury to decide whether Plaintiff's speech substantially involved matters of public concern based on the "the manner, time, and place of the employee's expression," as well as "the context in which the dispute arose."[82]

For its part, the City has adduced evidence that Morris terminated Plaintiff for insubordination and a refusal to accept Porter's supervision.  Plaintiff's records requests played a role in her termination insofar as Morris concluded the records requests had "escalated" the situation between Plaintiff and Porter.  Like any employer, the City has a legitimate interest in maintaining employee discipline and seeing that subordinates take direction from supervisors.  Because Plaintiff

---

[81] *Handy-Clay*, 695 F.3d at 543 (quoting *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997)).

[82] *Rodgers*, 344 F.3d at 601 (citation omitted).

sought her own supervisor's leave records, her requests arguably could have "impair[ed] discipline by superiors."[83]  And yet it is undisputed that after she questioned Porter's directive, Plaintiff did in fact comply with Porter's instructions to cover the front desk on August 25, 2010.  Whether Morris was justified in finding that Plaintiff had been insubordinate is a fact question for the jury to decide.  Moreover, based on the fact that Plaintiff sought payroll and leave records for all employees of the City Attorney's Office (and not just individuals she suspected of stealing time), her records requests had the potential to "create disharmony among co-workers," especially employees whom Plaintiff had no reason to suspect of stealing time.[84]  In this way, Plaintiff's broad records requests could have challenged the efficient operation of the City Attorney's Office.  In the final analysis, the City's motivation and its proffered justifications for dismissing Plaintiff are questions of fact for the jury.        Under the circumstances, the Court finds that *Pickering* balancing cannot occur until a jury resolves the fact issue raised by the parties.  The Sixth Circuit has held that "[a]pplication of the *Pickering* balancing test is a matter of law for the court to decide."[85]  However, "there may be some factual questions for a jury."[86]  The Eighth Circuit has

---

[83] *Id.*

[84] *Id.*

[85] *Farhat,* 370 F.3d at 593 (citing *Leary*, 349 F.3d at 898).  *But see Guercio v. Brody*, 911 F.2d 1179, 1183–84 (6th Cir. 1990) ("When a *Pickering* claim is adjudicated on its merits, it is for the fact-finder, be it jury or court, to determine the relative weight of these potentially antithetical interests.").

[86] *Farhat*, 370 F.3d at 589; *see also Westmoreland v. Sutherland,* 662 F.3d 714, 718 (6th Cir. 2011) ("There being no factual dispute regarding what was said, this court treats the question of whether a public employee's speech is protected as a question of law."); *See v. City of Elyria*, 502 F.3d 484, 494 (6th Cir. 2007) (approving the district court's approach to *Pickering* balancing where the lower court stated, "To the extent that there are factual issues within and relating to such balancing, there may be some questions that have to be sorted out for the jury.").

explained that "[a]lthough the court should resolve [the *Pickering* balancing] as a matter of law, '[a]ny underlying factual disputes concerning whether the plaintiff's speech is protected . . . should be submitted to the jury through special interrogatories or special verdict forms.'"[87]  For example, the finder of fact should first should decide questions about "the nature and substance of the plaintiff's speech activity" or the risk of disharmony in the workplace posed by the plaintiff's speech.[88]  As already mentioned, the City's motivation for its decision is also a question of fact.  The Court concludes then that summary judgment is not warranted on the *Pickering* issue until the jury has answered the factual predicates to be weighed as part of the balancing test.  For purposes of Defendant's Rule 56 Motion, viewing the evidence in the light most favorable to the non-moving party, Plaintiff has carried her burden to survive summary judgment on the *Pickering* issue.

As for the final inquiry, the Court finds that just as with Plaintiff's October 22, 2009 email, Plaintiff's August 26, 2010 records requests satisfy *Garcetti*'s "pursuant to" test.  Having concluded that Plaintiff's records requests addressed matters of public concern, that reasonable jurors could find that Plaintiff's interest in requesting the records outweighed the City's efficiency interests, and that Plaintiff did not request the records pursuant to her job duties, the Court holds that genuine issues remain about whether Plaintiff's August 26, 2010 records requests were protected speech activities.

---

[87] *Washington v. Normandy Fire Protection Dist.*, 328 F.3d 400, 404 (8th Cir. 2003) (quoting *Shands v. City of Kennett*, 993 F.2d 1337, 1342 (8th Cir. 1993)); *see also Bennis v. Gable,* 823 F.2d 723, 729 & n.6 (3d Cir.1987); *Pucci v. Somers*, 834 F. Supp. 2d 690, 696 (E.D. Mich. 2011).

[88] *Shands*, 993 F.2d at 1342–43 ("The trial court should then combine the jury's factual findings with its legal conclusions in determining whether the plaintiff's speech is protected.") (citations omitted).

**B. Adverse Action**

As the second element of her prima facie claim against the City of Memphis, Plaintiff must show that she suffered an adverse action.  In the context of a public employee's First Amendment retaliation claim, an adverse action is an employment action which "would chill or silence a person of ordinary firmness from future First Amendment activities."[89]  "The term adverse action has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote."[90]  Generally, whether an alleged adverse action "would chill or silence a person of ordinary firmness" is a question of fact.[91]  It is undisputed at summary judgment that Plaintiff's termination constitutes an adverse action.  Therefore, Plaintiff has satisfied this element of her claim.[92]

**C. Motivation for the Adverse Action**

As the third and final element of her prima facie, Plaintiff must prove causation by showing that the adverse action was motivated at least in part by her protected speech.  "In order to establish a causal connection between the protected conduct and the adverse action, plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse employment action] would not have occurred but for his engagement in protected activity."[93]

---

[89] *Dye*, 702 F.3d at 303.

[90] *Handy–Clay*, 695 F.3d at 545 (internal quotation marks omitted).

[91] *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012).

[92] Plaintiff has also argued that other acts rise to the level of adverse actions.  The Court addresses this argument in its analysis of Plaintiff's claim against Cathy Porter below.

[93] *Eckerman v. Tenn. Dep't of Safety,* 636 F.3d 202, 209 (6th Cir. 2010).

Plaintiff may prove causation with direct or circumstantial evidence.[94]  For example, Plaintiff can create an inference of causation based on the temporal proximity between her protected activity and suffering an adverse employment action.[95]  Additionally, proof of misconduct that does not rise to the level of an adverse employment action "may be relevant at trial to show a pattern of mistreatment on the job based on plaintiff's protected activities."[96]  Plaintiff must "point to specific, nonconclusory allegations reasonably linking her speech to employer discipline."[97]  Causation is generally a jury question unless there is no evidence from which a reasonable juror could find that the adverse action was motivated in part by protected speech.[98]

The Court holds that Plaintiff has carried her burden on the causation element.  Plaintiff has shown that she engaged in protected activity in October 2009 when she emailed Morris about her concerns over abuse of city pay and leave policies in the City Attorney's Office.  Plaintiff has further shown that she engaged in protected activity in August 2010 when she emailed requests for public records to Morris and other city officials.  The very short temporal proximity between Plaintiff's records requests and her termination creates an inference of causation.[99]  Furthermore, Morris specifically mentioned Plaintiff's public records request in his email to Mayor Wharton seeking approval for Plaintiff's termination. After Plaintiff's dismissal, Morris sent an email to Chief

---

[94] *Dye*, 702 F.3d at 305.

[95] *Id.*

[96] *Id.*

[97] *Rodgers*, 344 F.3d at 602.

[98] *Burgess v. Paducah Area Transit Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010).

[99] *Handy-Clay*, 695 F.3d at 546.

Administrative Officer George Little dated August 28, 2010, explaining his reasons for firing Plaintiff.[100]   In the email Morris quoted extensively from Plaintiff's October 22, 2009 email and attached the August 26, 2010 email with her records requests.   The Court holds that this evidence creates a genuine dispute about whether Plaintiff's emails were a motivating factor in her termination.

### D. City of Memphis's Rebuttal

Having concluded that Plaintiff has met her burden to make out a prima facie case of retaliation under the First Amendment, the burden shifts to the City of Memphis to prove by a preponderance of the evidence that it would have made the decision to terminate Plaintiff absent the protected conduct.[101] The Sixth Circuit has held that "summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant."[102]   The Court holds that genuine of issues of material fact remain as to the City's decision to terminate Plaintiff.   Viewing the evidence in the light most favorable to Plaintiff, reasonable minds could differ over whether the City would have terminated Plaintiff on August 27, 2010, without her protected speech, particularly her email records requests from August 26, 2010.   Therefore, Defendant City of Memphis's Motion for Summary Judgment is **DENIED** as to Plaintiff's protected speech in her October 22, 2009 email and her August 26, 2010 records requests.

### II. Claims Against Defendants Morris and Porter in Their Official Capacities

---

[100] Morris Dep., ex. 43 (Page ID 1542).

[101] *Dye*, 702 F.3d at 294 (quotation marks omitted).

[102] *Id.* at 295; *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010).

Defendant City of Memphis argues that any official capacity claim against Defendants Morris or Porter is actually a claim against the City itself. It is well-established that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."[103] Therefore, Defendant City of Memphis's Motion is **GRANTED** as to Plaintiff's claims against Morris and Porter in their official capacities.

## III. Claims Against Defendants Morris and Porter in Their Individual Capacities

Defendants Morris and Porter each seek qualified immunity on Plaintiff's § 1983 claims against them in their individual capacities. A government official sued under § 1983 may raise the defense of qualified immunity.[104] Government officials, including municipal employees, are immune from civil liability unless, in the course of performing their discretionary functions, they violate a plaintiff's clearly established constitutional rights.[105] Once the defendant raises the qualified immunity defense, the burden shifts to the plaintiff to show that the defense is unwarranted.[106] The plaintiff must prove that (1) the defendant violated a constitutional right and (2) the right was clearly established.[107] The Court has the discretion about which of these showings to address first.[108] To determine whether the individual Defendants were responsible for violating

---

[103] *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (*citing Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989)).

[104] *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012).

[105] *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006).

[106] *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011).

[107] *Sutton*, 700 F.3d at 871 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

[108] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (allowing courts the discretion to decide which of the two steps in the qualified-immunity analysis should be addressed first).

Plaintiff's constitutional rights, the Court must analyze their conduct separately because "[e]ach defendant's liability must be assessed individually based on his [or her] own actions."[109]

## A. Cathy Porter

Defendant Cathy Porter has asserted that she is entitled to qualified immunity on Plaintiff's retaliation claim against her, in part because there is no evidence Porter was involved in the decision to terminate Plaintiff's employment.  Plaintiff essentially concedes the point and argues instead that Porter took other adverse actions against her in retaliation for Plaintiff's protected speech, such as harassing Plaintiff about her time.  A person sued in their individual capacity under § 1983 can be held liable only for his or her own unconstitutional behavior.[110]  In other words,"[p]ersonal involvement is necessary to establish section 1983 liability."[111]  "To be held liable in a § 1983 suit in the employment context, a state official must commit more than a *de minimis* act leading to the plaintiff's termination."[112]

The Court holds that Porter is entitled to judgment as a matter of law on Plaintiff's claim against her in individual capacity.  There is no evidence from which a reasonable juror could conclude that Porter was personally involved in any adverse action taken against Plaintiff.  Specifically, there is no proof Porter was personally involved in the decision to terminate Plaintiff's

---

[109] *Savage v. City of Pontiac*, 483 F. App'x 943, 947–48 (6th Cir. 2012) (quotation omitted).

[110] *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

[111] *Murphy v. Grenier,* 406 F. App'x 972, 974 (6th Cir. 2011); *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").

[112] *Sigler,* 424 F. App'x at 455.

employment.[113]  It is undisputed that Morris made the decision to terminate Plaintiff and made the request to Mayor Wharton for approval of the decision.  Morris testified that he never sought any input from Porter in reaching the decision to terminate Plaintiff.[114]  Porter herself has denied that she was consulted, that she made a recommendation, or that she participated in any way in the decision to terminate Plaintiff.[115]  Plaintiff admitted in her deposition that she has no evidence Porter was involved in the decision to terminate her.[116]  Plaintiff has only shown that Porter had inquired about Plaintiff's parking space number just prior to her termination.[117]  Viewing this fact in the light most favorable to Plaintiff, the evidence shows that Porter may have known Plaintiff would be terminated.  This showing does not, however, prove Porter's personal participation in Morris's decision-making process.  Furthermore, Porter's act in obtaining information about Plaintiff's parking space is nothing more than *de minimis*.  Therefore, Porter is entitled to summary judgment on the claim against her in her individual capacity.

Plaintiff is left to argue that Porter had harassed her over a long period of time, for example by hounding her for her time, turning out the lights in Plaintiff's workspace, and denying her the access code to the office's back entrance.  This harassment appears to be the "retaliation" or "workplace abuse" claim the Court has already dismissed at the pleadings stage and the Sixth Circuit

---

[113] The Sixth Circuit previously held that Plaintiff had stated a claim against Porter merely because Porter knew about her protected complaints about leave abuse.  *Handy-Clay*, 695 F.3d at 546.  The problem at summary judgment is that Plaintiff has no evidence Porter was personally involved in the decision to terminate.

[114] Morris Dep. 102:12–103:5; 105:21–25.

[115] Indiv. Defs.' Statement of Undisputed Fact ¶ 37.

[116] Handy-Clay Dep. 302:13–20; 303:21–304:23.

[117] *Id.* at 302:20–303:13.

affirmed. What is more, the Court holds as a matter of law that none of this conduct rises to the level of an adverse action. As previously discussed, an adverse action in the context of a public employee's First Amendment retaliation claim is an employment action which "would chill or silence a person of ordinary firmness from future First Amendment activities."[118] "The term adverse action has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote."[119] Generally, whether an alleged adverse action "would chill or silence a person of ordinary firmness" is a question of fact.[120] However, claims based on "inconsequential" actions which produce merely "*de minimis* injury" are properly dismissed as a matter of law.[121]

While it is true that the Court must "tailor" its analysis "to the circumstances of [a] specific retaliation claim,"[122] the Court holds that all of the other acts besides Plaintiff's termination were *de minimis.* Therefore, dismissal as a matter of law is proper as to this conduct. Only Plaintiff's termination constitutes an adverse action to support her First Amendment retaliation claim, and Plaintiff has no proof of Porter's personal involvement in the decision to dismiss her. As such, Porter is entitled to qualified immunity.

**B. Herman Morris, Jr.**

---

[118] *Dye*, 702 F.3d at 303.

[119] *Handy–Clay*, 695 F.3d at 545.

[120] *Wurzelbacher*, 675 F.3d at 584.

[121] *Id.* (stating that it "trivializes the First Amendment to allow plaintiffs to bring claims for *any* adverse action, no matter how minor") (quotation, internal brackets, and ellipsis omitted).

[122] *Mezibov v. Allen,* 411 F.3d 712, 721 (6th Cir. 2005).

Defendant Morris also seeks qualified immunity as to Plaintiff's claims against him in his individual capacity. Although the precise nature of Morris's argument is not entirely clearly, counsel argued at the motion hearing that even if Plaintiff's speech was protected, the balancing required under *Pickering* was so uncertain in this case that reasonable public officials could have disagreed over whether terminating Plaintiff's employment violated her First Amendment rights.[123] Plaintiff responds that her free speech right to address matters of public concern was so clearly established at the time of her termination, no reasonable official could have believed that termination would not violate her constitutional rights. As previously mentioned, Plaintiff has the burden to prove that (1) Morris violated her First Amendment rights and (2) her right was clearly established.[124] The Court has already ruled that some of Plaintiff's speech constituted protected activity and that genuine issues remained about her retaliation claims based on that speech. The Court now considers whether Plaintiff's rights were clearly established at the time of her termination.

The United States Supreme Court recently held that in order to be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[125] Put another way, "existing precedent must have placed the statutory or constitutional question beyond debate."[126] The Court explained that the "clearly established" standard exists to protect "the balance between vindication of constitutional rights and government

---

[123] *See also* Def. Morris's Mem. in Support 16–17 (D.E. # 122-1).

[124] *Sutton*, 700 F.3d at 871 (citing *Saucier*, 533 U.S. at 201).

[125] *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quotation, internal brackets, and quotation marks omitted).

[126] *Id.*

officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages."[127]  Specifically, the constitutional right at issue must be established "in a particularized sense so that the contours of the right are clear to a reasonable official," and not simply "as a broad general proposition."[128]  "Where public employers move for summary judgment on the basis of qualified immunity, the issue is whether reasonably competent officials could disagree on whether the plaintiff's speech . . . was protected by the First Amendment."[129]

The Court's  inquiry then is whether the law was clearly established such that  Morris would have known at the time of Plaintiff's 2010 termination: (1) that Plaintiff's October 2009 email and August 2010 records requests involved a matter of public concern, and (2) that Plaintiff's interests in speaking on the matter of public concern outweighed the City of Memphis's interests in efficiency.[130]  Morris is entitled to qualified immunity if reasonable officials could have disagreed on either issue.[131]  For purposes of the qualified immunity analysis, "officials can still be on notice

---

[127] *Id.* (quotation, ellipsis, brackets, and internal quotation marks omitted).

[128] *Id.* (quotation and internal quotation marks omitted).

[129] *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 631–32 (6th Cir. 2012) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[130] *Id.* at 632; *see also Akridge v. Wilkinson*, 178 F. App'x 474, 481 (6th Cir. 2006) ("[I]f an employer in the position of the defendants at the time of the adverse job action, measured objectively, could have disagreed as to (1) whether and to what extent the speech was a matter of public concern, and (2) where the *Pickering* scale, with all of the parties' competing interests in the balance, would ultimately come to rest, then the protection of qualified immunity should be granted.").

[131] *Baar*, 476 F. App'x at 632.

that their conduct violates established law even in novel factual circumstances."[132] The Sixth Circuit has explained that "the greater the speech's relationship to a matter of public concern and the more minimal the effect on office efficiency the more likely a reasonable person would be to understand that the employer's actions violated the Constitution."[133] Even so, some difficulty exists in determining whether a reasonable official would have known the result of the *Pickering* balancing under a given set of circumstances. "*Pickering* requires a 'context-intensive, case-by-case balancing analysis' from which it is difficult to draw clearly established principles of law," and as such officials will "often be entitled to qualified immunity under *Pickering*."[134]  The Sixth Circuit has recognized that "in many public employee free speech cases it would be unclear to a reasonable official what the outcome of the balancing inquiry should be."[135]

The Court holds that genuine issues of fact remain that preclude summary judgment on Morris's qualified immunity defense.  At the first step of the inquiry, the Court has already concluded that Plaintiff's emails in October 2009 and records requests in August 2010 involved a matter of public concern.  The Court holds that Plaintiff's right in this regard was clearly established at the time of her termination.  At the second step of the inquiry, the Court must decide whether reasonable officials could have disagreed about whether Plaintiff's free speech interests outweighed the City of Memphis's interests in efficiency.  As the Court has already concluded, the Court cannot address the legal question of *Pickering* balancing in this case until the jury has first decided the

---

[132] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[133] *Scarbrough v. Morgan County Bd. of Educ.,* 470 F.3d 250, 263 (6th Cir. 2006).

[134] *Devlin v. Kalm*, No. 12-2530, 2013 WL 4265757, at *8 (6th Cir. Aug. 15, 2013) (citation omitted).

[135] *Williams v. Kentucky,* 24 F.3d 1526, 1537 (6th Cir. 1994).

factual issues the Court will need to balance.  Once the trier of fact reaches the issues, the Court can determine whether reasonable officials could have disagreed about whether Plaintiff's free speech interests outweighed the City of Memphis's interests in efficiency under the circumstances presented.  Therefore, the Court concludes that genuine issues remain on the question of Morris's qualified immunity.  As a result, Morris' Motion for Summary Judgment must be **DENIED** without prejudice to raise the issue again at the appropriate time.

<u>**CONCLUSION**</u>

The Court holds that genuine issues of material fact remain as to Plaintiff's § 1983 claim against Defendant City of Memphis.  Taking the evidence in the light most favorable to Plaintiff, her October 22, 2009 email to Morris and her August 26, 2010 public records requests constitute protected speech.  Plaintiff's § 1983 claims against Defendants Herman Morris, Jr. and Cathy Porter in their official capacities are actually claims against the City of Memphis itself.  Therefore, Defendant City of Memphis's Motion for Summary Judgment is **GRANTED IN PART, DENIED IN PART**.  The Court further holds that Defendant Cathy Porter is entitled to qualified immunity as to Plaintiff's § 1983 claim against her in her individual capacity.  Therefore, Defendant Porter's Motion for Summary Judgment is **GRANTED**.  However, genuine issues of material fact remain as to Defendant Morris's qualified immunity.  Therefore, Defendant Morris's Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 19, 2013.

46